JACK CORTES v. STATE.

185 So. 323.
Division A.
Opinion Filed December 16, 1938.

*Chester H. Ferguson,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General, for the State.

PER CURIAM.—The first two questions presented by defendant Cortes in his brief read as follows:

"Question No. 1. The information was filed by the Solicitor against the defendant October 21, 1937. To said information on December 29, 1937, the defendant filed his plea in abatement, therein averring that said information was void and ineffectual, in that, the said County Solicitor, before he filed said information, did not at any time have any witnesses before him under process of the court; that no person whomsoever testified to any facts which, if true, would constitute the offense in said information alleged. On December 30, 1937, said Solicitor filed an unsworn motion requesting leave of the court to reswear to and refile said information. An order to such effect on the following day was entered, and on said date the information was resworn to and refiled by the Solicitor. Whereupon, on the 19th day of January, 1938, the defendant, through counsel, requested leave of court to withdraw defendant's plea of not guilty and to interpose said plea in abatement to said information as resworn to and refiled. This the Court denied. Was such ruling of the court error?"

"Question No. 2. Where the Constitution and laws of Florida require as a prerequisite to a valid charge, as well as a prerequisite to the jurisdiction of the court to prosecute and impose any valid judgment against persons charged with violation of criminal law, that an investigation must be made into the facts concerning said alleged offense by the County Solicitor before or at the time of making the affidavit and filing the information, and he is required to make an oath to an affidavit which forms a part of said information, reciting that facts have been sworn to as true concerning said offense, and which, if true, would constitute the offense therein charged; and where it is made to appear that in fact the County Solicitor made no such in-

vestigation at all and had no facts before him concerning said alleged offense prior to or at the time he made said affidavit, and said affidavit is false and untrue, does the Court have jurisdiction to proceed with said prosecution or impose a judgment in said cause?"

The original information filed by the County Solicitor in this case was based solely upon testimony taken at a preliminary hearing before the County Judge. In Anderson v. State, 134 Fla. 290, 183 So. 735, decided at this term, the information filed by the County Solicitor was based on testimony taken before a Justice of the Peace. The defendant contended the information was void *ab initio,* but this Court held the Constitutional provisions and statutes controlling the subject did not require that the information filed by a Solicitor of the Criminal Court of Record shall be based solely and exclusively upon the testimony taken before him. Under this ruling the contention of the defendant is not well founded.

The third question raised by defendant reads as follows:

"Question No. 3. The defendant filed simultaneously with and subject to his plea in abatement his plea in bar, which set up that the defendant was granted immunity from prosecution for the crime in the information charged, in consideration of the defendant's giving testimony in the trial of a case involving the principal offense of armed robbery out of which the charge of receiving stolen property lodged against the defendant arose, when it appeared from the allegations of said plea that the defendant was charged as one of the principal offenders in the county in which the principal offense was committed and that immunity was granted him upon and after an agreement had been entered into by the State's Attorney of that county and had been duly approved and confirmed by the order of the Circuit Court trying said principal offense. A demurrer to said

plea was interposed by the State and same sustained. Did the court err in sustaining said demurrer?"

The right to immunity from prosecution is equitable merely, based on the pledged faith of the public, and does not entitle the accomplice to plead the promise of immunity as a bar. He is not entitled to discharge as a matter of right, but must abide by the sound discretion of the Court and prosecuting attorney. 16 C. J. Criminal Law, Sec. 65, p. 94; Newton v. State, 15 Fla. 610; Ingram v. Prescott, 111 Fla. 320, 149 So. 360; NOTES in 40 Am. St. Rep. 767, 774, and 24 L. R. A. (N. S.) 439, 440.

We are of the opinion that a contract of immunity, even though approved by the Court, and even if given the construction contended for by counsel which we do not do, is not a good plea in bar, but only affects the right to enforce or impose sentence as punishment. In holding that there was no error in the lower Court's ruling on the demurrer to the plea in bar, we have found it unnecessary to consider the question of whether the Circuit Court of Osceola County had jurisdiction to grant defendant immunity from prosecution for a case that was then pending in Hillsborough County, nor are we placing any construction on the agreement entered into by defendant and the prosecuting attorney in Osceola County.

In his fourth and fifth questions defendant contends that in view of the insufficiency of the proof of the *corpus delicti* the Court erred in allowing evidence to be admitted concerning the admissions of the defendant which tended to prove the commission of the crime.

R. G. Whittle testified that he was a driver for the St. Johns River Line, and that on or about the 25th day of June, 1936, while driving his truck between Campbell's Station and Kissimmee he was held up and robbed, and 123 cases of cigarettes were taken from him. That these ciga-

rettes were worth approximately $55.00 per case. That he, knew these cigarettes because he loaded them all on the .truck, and that thereafter he saw two cases of the cigarettes that had been taken from him. That he knew them by the truck line stamped on them. That the cigarettes that were taken from him were being transported by his company for trade, and that they really belonged to Eli Witt or other customers.

The next witness was A. L. Quinn, who testified that he saw the defendant put two cases of cigarettes into his car on June 30th, 1936. That defendant covered them up in the car and got in, and that he, Quinn, and another officer named Wallis chased him for about two miles and arrested him, and they found two cases of cigarettes in the car. That the defendant offered them money to let him go.

The next witness, George L. Wallis, testified that he was with the officer Quinn and saw the defendant go in the house, get the cigarettes, come back out and put them in his car. That they chased him for about two miles and arrested him. That the defendant offered them money to let him go. That the defendant told them that the balance of the cigarettes were at the defendant's house.

A. C. Logan, Deputy Sheriff, testified that the defendant offered to bribe him to let him go. That the defendant also offered money to let him and Johnny Martin go. C. J. Woodruff, Chief of Police of the City of Tampa, testified that the defendant tried to bribe him to let him go.

That the property was stolen is proven by R. G. Whittle. The defendant was subsequent to the robbery found in possession of two cases of the cigarettes, and this leaves for consideration the only question of whether the fact that defendant knew the property was stolen was established *prima facie* by proper proof. It is sufficient if this proof is introduced after the admissions, and if it justifies the

admission of such evidence, the technical error in prematurely admitting such evidence will be cured. Smith v. State, 93 Fla. 238, 112 So. 70.

The State proved that the defendant fled when he was discovered with the cigarettes. Deputy Sheriff Wallis testified that they followed defendant several miles; that he was driving about 50 or 55 miles an hour; and that defendant looked back at the Sheriff's car every time he turned a corner. This evidence was sufficient to *prima facie* show that defendant knew the property was stolen.

The defendant then contends that because the evidence shows that the cigarettes actually beonged to persons other than the St. Johns River Lines, as alleged in the information, there is a fatal variance between the *allegata* and *probata*. The record shows that the St. Johns River Lines was transporting the property for other persons and that it was in lawful custody of the property and entitled to its possession. Therefore, there is no merit in this contention. Shiver v. State, 103 Fla. 871, 138 So. 502; Mathews v. State, 85 Fla. 194, 95 So. 609; Parker v. State, 75 Fla. 741, 78 So. 980, 2 A. L. R. 350.

The next question presented by defendant in his brief reads as follows:

"Question No. 7. Where it appears from the testimony that certain admissions and confessions were procured from the defendant by unlawful means, namely, under fear or duress and punishment, and upon objection of the defendant these statements were excluded by the court, but upon timely objection thereafter made the court allowed subsequent admissions or left-handed confessions in the form of alleged attempts to bribe allegedly made by the defendant to be admitted in evidence, although the alleged attempts to bribe transpired after said excluded admissions and confessions had been obtained from the defendant, was such

action of the court in admitting this testimony concerning the alleged attempts to bribe under the conditions aforesaid, error?"

Immediately after defendant was arrested he was taken to a secluded spot on the Hillsborough River and while there was slapped by one of the officers. The lower Court in ruling upon the admissibility of the confessions or admissions of defendant said:

"So far as the admissions or confession is concerned, the rule of law is unless they were freely and voluntarily made they are not admissible. They must be made without violence, and without threat, violence, promise or reward, or hope of reward, based on any inducement held out by the officers. Now, any admission or confession that may have been made up until the time the defendant reached the river, the court is going to admit, subject, of course, to the right of the defendant to offer any evidence before the jury tending to show that they were not freely and voluntarily made. But this Court is of the opinion that where a man is taken out to a place like that, and several officers with him and where it appears that he actually was questioned after he got out there, that under those circumstances this Court is not going to admit those confessions or admissions."

Subsequently the Court said:

"I will rule, to make this clear, anything that transpired subsequent to the time he was taken to the river—except any offer of money—anything except that would be inadmissible; the other portion, what the defendant said about being released in consideration of the payment of money, anything that was said on that point would be admissible."

During the course of the trial the Court admitted only

the evidence of attempted briberies by defendant and ex-cluded all other admissions or confessions.

The defendant's counsel objected to this testimony, con-tending that it was in the nature of a confession. The offer to bribe was not a confession, but merely a statement against interest. The rule is that when a suspected person in any manner endeavors to escape or evade a threatened prosecution by flight, concealment, resistance to a lawful arrest or other *ex post facto* indication of a desire to evade prosecution, such fact may be shown in evidence as one of a series of circumstances from which guilt may be in-ferred. Carr v. State, 45 Fla. 11, 34 So. 892. The testi-mony relating to an attempt to bribe after arrest is ad-missible as part of the *res gestae* of the crime to show consciousness of guilt. Wharton's Criminal Evidence (11th Ed.), Vol. I, Sec. 503, p. 771; Underhill's Criminal Evidence (4th Ed.), Sec. 253, p. 473.

The eighth question presented by defendant in his brief reads as follows:

"Question No. 8. Where it appears from the testimony that the arresting officers, in the absence of a warrant for arrest and in the absence of a search warrant and while the defendant was not violating any law, was apprehended and his car was searched and there were found two cases of cigarettes, and at that time said officers did not know whether the cigarettes were stolen property or not, but took the defendant into custody and at the trial of this case, the court, over objection of the defendant, held that such arrest was legal and allowed the arresting officers to testify concerning the same and as to the finding of the cigarettes and to introduce the cigarettes in evidence, was such action of the court error?"

The record shows that the officers had information that the defendant was concealing stolen property, and that they

were shadowing his house. Then defendant came out with part of the stolen goods, placed them in his car, drove away and attempted to escape. The defendant drove his car in the City of Tampa up to a speed of 55 or 60 miles per hour, and when they finally stopped the defendant they found the stolen property in his possession.

Police officers in this State, under Section 8323, Compiled General Laws of Florida, 1927, have the authority to arrest any person without a warrant if they have reasonable grounds to believe and do believe that said person has committed a felony. This is merely a re-statement of the common law. 4 Am. Jur., Arrest, Sec. 48, p. 33.

It seems the officers had reasonable grounds to believe that the defendant may have committed a felony. Although that belief is based on what someone may have told them, the Court is of the opinion that is sufficient. Ellis v. State, 92 Fla. 275, 109 So. 622. The arrest may also have been justified because the defendant was then committing the misdemeanor of reckless driving.

The ninth question is stated by defendant in his brief as follows:

"Question No. 9. When it appears in the trial of a case that the court, over objection of the defendant, has allowed the State's witnesses to testify to certain alleged attempts to bribe allegedly made by the defendant, and in order for the defendant to deny the same he takes the stand and his examination in chief is limited solely to a denial of this testimony, but thereafter, over objection of defendant's counsel, the court allows the defendant to be interrogated on cross-examination about matters not interrogated upon in direct examination, was the action of the court in such regard error?"

Counsel for defendant in his interrogation made the following statement:

"Mr. Cortes, I am going to start and limit your examination from the time that you were arrested by Wallis and Quinn, and ask you solely what transpired from that time on."

The defendant then testified that on the 30th day of June he was arrested and was handcuffed and taken to the Hillsborough River; that he had no conversations with Mr. Wallis, the deputy sheriff, until they had reached the river; that they kept him there three hours; that there they struck him in the head and face and broke his glasses, and struck him in a portion of his body where he had been operated on; that he did not offer Quinn or Wallis or anybody any money for any purpose; that they told him if he did not say everything that they would do the same thing to him that they had done to Shoemaker; that they took him to the County Jail and then to the City Jail.

On cross-examination he was asked if he had two boxes of cigarettes in his car, where he got them from, if Wallis asked defendant where the rest of the cigarettes were. He was also interrogated as to the conversation between him and Wallis on the way to the river and whether or not he offered to bribe the officers.

In Wharton's Criminal Evidence (11th Ed.) Vol. 3, Sec. 1325, 1326, p. 2202-2203, it is said:

"Considerable latitude should be allowed in the cross-examination of the accused. Indeed, since in the cross-examination of an adverse party a great latitude of inquiry is allowed, great latitude should be allowed in the cross-examination of the defendant; at least, the accused may be cross-examined with the same latitude as other witnesses, even though his testimony is self-incriminating. A prisoner who takes the witness stand in his own behalf waives his constitutional privilege of silence, and the prosecution has the right to cross-examine him upon his evidence in chief

as to the circumstances connected with the crime with the same latitude as would be exercised in the case of an ordinary witness. Indeed, some allow even a wider or greater latitude in the cross-examination of the accused than is ordinarily the case. The accused does not, however, by offering himself as a witness in his own behalf, waive his right to object to improper cross-examination designed to elicit incompetent evidence, especially of an incriminating nature, and it is the duty of the court to keep the cross-examination within the law.

"As an application of the well-settled rule applicable to witnesses generally, the form, extent, and latitude of the cross-examination of an accused who voluntarily offers himself as a witness are matters for the discretion of the trial court, especially if the examination is on facts not touched upon in his direct examination, or if it is concerned with matters of an irrelevant nature which tend to disgrace or degrade him and to impair his credibility, such as his past life and conduct. This discretion will not be interfered with by the reviewing court unless there is a clear abuse thereof."

A clear abuse of the trial court's discretion is not shown, and this court sees nothing in the cross-examination in question that was not permissible in the trial during which it occurred. The evidence is sufficient to support the verdict and no harmful errors have been shown to exist in the record.

The judgment should be, and is, affirmed.

So ordered.

TERRELL, C. J., and WHITFIELD, BUFORD and CHAPMAN, J. J., concur.

BROWN and THOMAS, J. J., concur in the conclusion.