## JAMES C. LONGO v. STATE OF FLORIDA

26 So. (2nd) 818                                    June Term, 1946
July 2, 1946                                              Division B

*McKay, Macfarlane, Jackson & Ferguson, Chester M. Ferguson* and *William C. Grimes,* for appellant.

*J. Tom Watson,* Attorney General, *Cecil T. Farrington,* Assistant Attorney General, for appellee.

SEBRING, J.:

The appellant, James C. Longo, was charged with having in his possession certain lottery tickets of the kind commonly known as "Cuba," which tickets were for lottery not yet played, contrary to section 849.09 Florida Statutes, 1941. F.S.A. He waived jury trial and was tried before the court. On the evidence submitted the court found the defendant guilty of the offense charged and imposed sentence. A new trial was denied and an appeal was taken from the judgment and sentence.

At the trial the defendant objected to the introduction into evidence of certain lottery tickets and money found in an automobile being driven by the defendant at the time of his arrest, on the ground that the search and seizure was made without a search warrant and without reasonable cause for belief that a felony had been or was being committed by the appellant. The trial judge overruled the objection and re-

ceived the evidence. This ruling is made the basis for the assignments of error on appeal.

There can be no real dispute about the facts in the case, as the only evidence before the tial court was that offered by the State. The two State witnesses, who were deputy sheriffs of Hillsborough County assigned to the duty of apprehending persons engaged in the bolita or "Cuba" traffic in Hillsborough County, testified that on September 22, 1945 they had received information from a reliable source that on that date, between 2:00 and 2:15 P. M. a black V-8 Ford automobile driven by an employee of Nebraska Liquor Store would come across Gandy Bridge into Hillsborough County transporting bolita tickets which had been sold in Pinellas County for that afternoon's drawing of "cuba." The officers went to the Hillsborough County approach to the bridge and waited for the car. At the stated time a black Ford automobile driven by an employee of the store arrived as predicted. The officers pursued the car but the driver eluded them and got away. After this incident occurred the officers received further information from the same source that another automobile was to be used for picking up the tickets, and that on October 6, 1945, between 2:00 and 2:15 P. M. a black Buick sedan, 1939 model, driven by still another employee of the Nebraska Liquor Store would travel the same route into Tampa with tickets which had been previously sold in Pinellas County for the afternoon's drawing of "Cuba."

Believing the information received to be true, and acting upon it, the officers went to the Hillsborough County approach to Gandy Bridge for the purpose of intercepting the Buick automobile and taking the driver into custody when he came over. At about 2:10 P. M. the appellant, who was known to the officers as an employee of the Nebraska Liquor Store, came off the Gandy Bridge from the direction of Pinellas County, driving a black Buick sedan automobile, 1939 model. As the officers started their car after him the driver of the Buick sedan, who was acquainted with the officers, apparently saw them coming, and speeded up in an attempt to get away. A chase ensued during which the driver of the Buick sedan drove through certain outlying Tampa streets on highways at

a speed of 80 to 85 miles an hour. He was finally overhauled after a chase of approximately two miles, and was informed by the officers that he was under arrest for speeding, and for any other violation of the law of which he might be guilty. Longo, the driver of the black car, appeared to be extremely nervous when apprehended and denied having come into Tampa by way of Gandy Bridge. A few moments later he changed his statement and admitted that he had come by that route. The officers then informed Longo that he was suspected of transporting bolita tickets and asked him if they might search his car to determine the truth or falsity of the suspicion. Longo gave his consent to the search and voluntarily handed over to the officers a key with which to unlock the trunk of the automobile. In the trunk were found sacks of "Cuba" tickets which had been sold for a lottery to be played that afternoon, and certain sacks containing money in an amount equaling the price of the tickets sold. When the tickets and money were found the appellant, Longo, implored the officers "to give him a break, that he was just an employee"; that "this was the first time and that he got caught and was made the goat."

It appears to us that if the appellant ever had the right to protest that the evidence used to convict him was obtained by an unlawful search and seizure that right was waived when, as testified to by the arresting officers and apparently believed by the trial judge, he freely gave his consent to a search of the car which he was operating and voluntarily turned over his keys to the arresting officer for that purpose. See Carlton v. State, 111 Fla. 777, 149 So. 767; Gant v. State, 114 Fla. 23, 152 So. 710; Powell v. State, 131 Fla. 254, 175 So. 213; Tomlinson v. State, 129 Fla. 658, 176 So. 543.

But even had consent to a search not been given, we think that the facts and circumstances within the knowledge of the arresting officers at the time the arrest was made were sufficient to warrant a reasonable belief that lottery tickets were being transported in the automobile driven by Longo, contrary to law. It appears from the testimony that both arresting officers were experienced in the investigation of lottery cases in Hillsborough County. They knew from their own

experience in such matters that it was the policy of sellers of lottery tickets to close the selling at about 2:00 P. M. on Saturday in order to provide time for checking the sales at some establishment in Tampa prior to the time that the numbers were drawn at about 4:30 P. M. in Havana, Cuba. They believed from information coming to them that the Nebraska Liquor Store had some connection with the bolita traffic in Hillsborough County, and that certain of its employees were being used as pickup men to bring in bolita tickets from outlying areas. Acting upon information received two weeks prior to the arrest of Longo they had seen a Ford V-8 automobile driven by a Nebraska Liquor Store employee come across Gandy Bridge at almost exactly the time of day their informant had predicted that such an automobile would arrive at that spot transporting lottery tickets. The fact that the driver of the car eluded the officers when they gave chase instead of stopping, although not proof of the fact that lottery tickets were being transported was certainly enough to confirm in their minds a well-founded suspicion that the car was being used by the Nebraska Liquor Store, or its employee, for some purpose other than lawful. Later information received from the informant was that the car and driver for transporting lottery tickets would be changed, but that on October 6, 1945, sometime during a stated 15 minute period, a car of particular make, color and model and driven by another employee of the Nebraska Liquor Store would again traverse the same route over Gandy Bridge for the unlawful purpose of bringing lottery tickets into Tampa. At the appointed time a car answering the description and driven by an employee of Nebraska Liquor Store did come across the bridge from the direction of Pinellas County. Although the officers were plain clothes men the driver of the Buick car knew them personally, and when they started to follow him he ceased driving in a normal manner and recklessly accelerated his speed to more than 80 miles an hour. This occurred before the officers had made any attempt whatever to stop appellant, or otherwise to put him on notice that he was wanted. When he was overhauled he was visibly agitated and nervous and under questioning denied having come across Gandy Bridge. Later he retracted the statement and confessed that he had come into Hillsborough County by such route.

It is not every search of an automobile without warrant that is unlawful, but only one that is unreasonable. What is a reasonable or valid search must be determined by the court upon due consideration of the circumstances and manner under which the search is made. Haile v. Gardner, 82 Fla. 355, 91 So. 376. When all of the evidence in the case is duly considered we think it manifestly plain that the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient in themselves to warrant men of reasonable caution in the belief that lottery tickets were being transported in the car which they stopped and searched. This would seem to justify the search and seizure that was made without warrant. See Haile v. Gardner, supra; Cortes v. State, 135 Fla. 589, 185 So. 323; Carroll v. United States, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A.L.R. 790; Husty v. United States, 282 U.S. 694, 75 L. Ed. 629, 51 S. Ct. 240, 74 A.L.R. 1407.

The judgment appealed from is affirmed.

It is so ordered.

CHAPMAN, C. J., BROWN and THOMAS, JJ., concur.