46 So.2d 871 (1950)
DUNNAVANT
v.
STATE.
Supreme Court of Florida, Division B.
June 13, 1950.
*872 Philip D. Beall, Jr., and Coe & Eggart, Pensacola, for appellant.
Richard W. Ervin, Attorney General, and Murray Sams, Jr., Assistant Attorney General, and Roy T. Rhodes, Special Assistant Attorney General, for appellee.
CHAPMAN, Justice.
The appellant, Louie Frank Dunnavant, was convicted of the crime of possessing untaxed liquor in the Court of Record of Escambia County, Florida, and sentenced to serve a period of two years at hard labor in the State Prison. The whiskey was found in the appellant's home when it was searched by the officers under the authority of a search warrant. The judgment of conviction challenged on this appeal either stands or falls on the legality of the search of the appellant's home. The search warrant was issued on the affidavit of Nolen L. Booker by Honorable Harvey E. Page, County Judge of Escambia County, Florida, and are substantially as follows:
"State of Florida,
"Escambia County.
"Before the Undersigned Harvey E. Page, County Judge personally came Nolan Booker who by me being first duly sworn deposes and says:
"(2) That the laws of the State of Florida, towit: The Laws against the sale, possession, manufacture of untaxed alcoholic and intoxicating liquor are being violated on the following described premises: a one story frame building located on the northwest corner of West Jackson and North A Streets and bearing the number 700 on the Jackson Street side in the City of Pensacola, County of Escambia, State of Florida, and being the premises of persons unknown by reason of the following facts, to-wit: On June 1, 1949, the affiant searched a confidential informer and determined that he had no whiskey on his persons and witnessed him enter the building described above and in a few minutes come therefrom and come directly to affiant, when he handed him one pint bottle of non tax paid or moonshine whiskey. Affiant gave the confidential informer two dollars before he entered the said premises and the informer stated that he paid two dollars for the pint of non tax paid whiskey and that the whiskey was secured from the back part of the building and delivered to him in the front part of the building.
"Search of the above premises to be made to seize all untaxed intoxicating beverages, and/or all apparatus, containers, etc., used in and about the possession, manufacture or sale of untaxed alcoholic beverages and to seize all persons in possession thereof.
"Wherefore it is prayed that a search warrant issue for the above described premises to seize all untaxed, illegal intoxicating liquors and all illegal untaxed apparatus, containers, etc., used in and about the unlawful sale, possession and manufacture of untaxed and illegal intoxicating beverages.
 "/s/ Nolen L. Booker
"Sworn to and subscribed before me in my presence this 3 day of June, A.D. 1949.
"(Seal) /s/ Harvey E. Page
"County Judge, Escambia County, Fla.
"The above application for search warrant coming on to be heard and having examined the applicant under oath and the above sworn affidavit set forth and other *873 facts and thereupon being satisfied that there is probable cause to believe that the grounds set forth in said application and facts do exist and that the law is being violated as alleged, I so find and a search warrant is hereby allowed and issued.
 "/s/ Harvey E. Page
"County Judge, Escambia County, Fla.
 "Search Warrant
"State of Florida |
 >
"County of Escambia |
"In the Name of the State of Florida:
"To All and Singular the Sheriffs and Constables, Supervisors and Agents of the Beverage Department of the State of Florida:
"Whereas, complaint on oath and in writing, supported by affidavit has been made before the undersigned County Judge of Escambia County, Florida, and Whereas said facts made known to me have caused me to certify and find that there is probable cause to believe that the laws of the State of Florida have been and are being violated on or in the premises known and described as follows: A one frame building located on the northwest corner of West Jackson and North A Streets and bearing the number 700 on the Jackson Street side, in the City of Pensacola, in the County of Escambia, State of Florida, and being the premises of persons unknown, by having on and in said premises illegal, untaxed intoxicating beverages.
"Now, Therefore, you or either of you, with such lawful assistance as may be necessary, are hereby commanded, in the day time or in the night time, to enter the said premises and then and there to search diligently for said illegal, untaxed intoxicating beverages, property described in this warrant, and if the same or any part thereof be found on said premises, you are hereby authorized to seize and secure the same and to make return of your doings under this warrant to the undersigned within ten days from the date hereof, and you are likewise commanded in the event you seize or take the property or materials mentioned in this warrant to safely keep the same until otherwise ordered by a court having jurisdiction thereof, and that you give proper receipts for said property and deliver a copy of this warrant to the person from whom taken or in whose possession it is found or in the absence of any such person to leave said copy in the place where said property or material was found, and you are further directed to bring all illegal, untaxed, intoxicating beverages, illegal untaxed distilling apparatus, containers, etc., if any found, and the person or persons in possession thereof, before a court of competent authority.
"Witness my hand and official seal this the 3 day of June, A.D. 1949.
 "/s/ Harvey E. Page
 "County Judge
"Received 3rd day of June, 1949.
"And returned this 3rd June day of June, A.D. 1949.
"Served by making search as within directed; upon which search I found approximately 4 and 1/2 gas. moonshine whiskey.
 "/s/ N.L. Booker
"Sworn to and subscribed before me this 4th day of June, A.D. 1949.
 "Alma Ward
 "Notary Public."
It appears by the record that the appellant owned and operated a grocery store and meat market on June 3, 1949, at the corner of Jackson and "A" Streets in the City of Pensacola, being No. 700 Jackson Street. The building was under one roof and part of it used as a grocery store and the remaining portion of the building occupied by the family of the appellant as a dwelling. The living quarters of the appellant and wife were connected with the grocery store by a door but no business was transacted with the public in the living quarters. It is true that the appellant went from his grocery store through a door into his living quarters but the door was closed to the public. The officers found no whiskey in the grocery store, but found the whiskey described in the information in the bathroom of the appellant's living quarters.
Mr. Booker, in part, testified for the State viz.: "A. * * * The living quarters is right in where we went; right in *874 this corner is your meat box, this is an opening here. This is a door that opens into one room and off from that door right behind the meat box is also a bedroom and this little closet is right through this opening, right in this corner, right here. (Indicating on diagram).
"Q. In other words, the closet gives in the bedroom? A. Yes, sir.
"Q. What I am particularly interested in, Mr. Booker, is the outer door. Did you not recall a table in here like an ordinary dining room? A. Yes, sir, that is on the rear of the building."
"We went into the store and I told Mr. Dunnevant, I asked him, `Who was in charge' and he said `he was', I asked him his name and he told me, and I told him I had a search warrant to search his premises and he said `Go ahead'. Supervisor Harper went around behind the market and Mr. Dunnevant said `What are you looking for', I said `Whiskey' and he said `Come on back here and I will show it to you. I don't want to cause any more commotion around here than I can help'."
The appellant testified, in part, viz.:
"When these gentlemen came to make the search of the premises, will you state to the Court what happened? A. Well, I had a house full of customers and so when he come in he told me he was the law and so I didn't know what else to do and he said `I have got a search warrant to search your building' and I said `What are you hunting' and he said `Whiskey' and I didn't know anything else to do. I carried him in the back.
"Q. In other words, you assumed this search warrant was good and you cooperated with them? A. Yes, sir."
Arguments of counsel for the respective parties center about two questions as controlling and, as stated in the briefs, are viz.:
Question No. 1: Where a search warrant is executed and the executing officer wholly fails to deliver the written inventory and receipt required by Section 933.11, F.S.A., is the evidence found upon the search admissible over timely objection?
Question No. 2: Where two buildings exist under one roof, at a street intersection, the one occupied as a dwelling house and facing upon "A" Street, and the other occupied as a grocery store facing upon "A" and Jackson Streets, having an entrance on both streets and is known as No. 700 West Jackson Street, may law officers under a search warrant for the building at the intersection "bearing the number 700 on the Jackson Street side" search not only the building described but the adjacent dwelling, both being occupied by the same tenant?
It appears that the information filed below was drafted under the provisions of Section 562.32, F.S.A. See Harris v. State, 160 Fla. 720, 36 So.2d 372. Section 933.04, F.S.A., provides: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches shall not be violated and no search warrant shall be issued, except on probable cause, supported by oath or affirmation particularly describing the place to be searched and the person and thing to be seized". (Emphasis supplied.) The Fourth Amendment to the Federal Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." See Section 22 of the Declaration of Rights to the Florida Constitution, F.S.A.
The term "probable cause" has been defined as a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged. The courts in determination of the existence of probable cause are not concerned with the question of the guilt or innocence of the accused but whether or not the affiant has reasonable grounds for his belief. If the facts set out in an affidavit for a search warrant are such that a reasonably *875 discreet and prudent man would be led to believe that there was a commission of the offense charged, then there is probable cause for the issuance of the search warrant. Dumbra v. United States, 268 U.S. 435, 45 S.Ct. 546, 69 L.Ed. 1032.
The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures is vouchsafed by both the State and Federal Constitutions. Search warrants are issued only on probable cause supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized. The oath or affirmation before the County Judge as the basis of the search warrant authorized the search of appellant's grocery store and meat market at No. 700 Jackson Street in the City of Pensacola, but the evidence is insufficient to sustain the existence of probable cause as to the appellant's dwelling  separated by a partition and door opening into the grocery store. The grocery store was located at No. 700 Jackson Street, but the doors to the dwelling opening on "A" Street were not numbered. Mr. Booker's affidavit recited that he gave an informer $2 before the informer entered (the grocery store) and the informer thereafter told Mr. Booker "that he paid two dollars for the pint of non tax paid whiskey and that the whiskey was secured from the back part of the building and delivered to him in the front part of the building". The evidence was insufficient to show that non tax paid whiskey was being sold from the appellant's dwelling when the search warrant issued, but, on the other hand, was being sold in the grocery store and meat market.
Counsel for appellee contends that even if the search of the appellant's dwelling was unauthorized because of an invalid search warrant, then the home was lawfully searched by the officers with the consent and approval of the appellant. Our holding in the case of Longo v. State, 157 Fla. 668, 26 So.2d 818, is cited to sustain the view. The officers executing the search warrant construed it to mean that they had the authority "to search your building" to mean the grocery store and meat market and home. It is true that the search warrant was authority only to search the grocery store and meat market and not his home. As we study the record, the consent of the appellant to a search of his home was obtained by the officers erroneously stating to appellant: "I (the officers) told him (the appellant) I had a search warrant to search his premises and he said, `Go ahead'". It is true that the searching officers thought or believed they had a lawful right to search for the whiskey in both the store and home of the appellant. The consent to the search by the appellant was nothing more or less than his submission or agreement with the officers to comply with the majesty of the law and we cannot, under the peculiar circumstances of this case, hold that the appellant waived rights guaranteed to him by our State and Federal Constitutions. The facts in the Longo case disclose that the search of the automobile was made incident to an arrest. The appellant here was not under arrest and consented to the search of his home when the officers claimed they had a right to search the store and home under a search warrant. Such a consent cannot be construed as a waiver of appellant's constitutional rights against search and seizure.
Appellant through counsel seasonably presented a motion to suppress the evidence obtained under the search warrant on the grounds: (1) the search was made and seizure had without warrant or authority of law and not under circumstances justifying search without seizure; (2) the search was made of a dwelling place and not the property described in the search warrant. It is our view and conclusion that the motion to suppress should have been sustained as to the search and seizure of the things found in the dwelling of the appellant but overruled as to the seizures made in the grocery store and meat market.
The judgment is reversed and a new trial awarded.
ADAMS, C.J., and SEBRING and HOBSON, JJ., concur.