64 So.2d 766 (1953)
ESCOBIO
v.
STATE.
Supreme Court of Florida, Special Division B.
May 1, 1953.
Martin & Martin, Plant City, for appellant.
Richard W. Ervin, Atty. Gen. and William A. O'Bryan, Asst. Atty. Gen., for appellee.
SEBRING, Justice.
The appellant, Escobio, was convicted of the unlawful possession of marijuana cigarettes. He appealed from the judgment and sentence, assigning as grounds for reversal that the trial court erred in giving certain charges to the jury and in refusing to grant the defendant a new trial upon grounds specified in his motion.
The defendant did not offer any evidence in his own behalf. The facts developed by the evidence offered by the prosecution were that two police officers of the City of St. Petersburg had information which led them to believe that marijuana was being used and possessed by the occupants of a garage apartment located on certain premises in St. Petersburg. Accordingly, they had had the premises under surveillance for a period of approximately three months prior to the early morning of May 4, 1951, the day the defendant was arrested. On the night of May 3, 1951, they stationed themselves in an alley to the rear of the premises in such a position that they could see into some of the windows of the apartment.
While stationed there they overheard a conversation between the three women who occupied the apartment and three men, one of whom was the defendant, with respect to the men driving to Tampa to purchase some "stuff" for use by the women. During *767 the course of conversation between the occupants of the apartment the police officers overheard one of the men asking the women how they used the "stuff" to which one of them replied that they smoked it. The man thereupon asked, "Do you need some now? We have got some with us." And the woman replied, "No, we don't need it that quick."
Other parts of the conversation were devoted to a discussion of the price to be paid for the "stuff," the woman wanting to get it for $15 and the defendant insisting that it would cost not less than $20, a can; that he wasn't sure he could get it at that price; that he didn't think his contact would sell that small a quantity for the money they had. The conversation terminated with the agreement that the occupants would go to Tampa and that the men would try to buy as many cans of the "stuff" as could be purchased for $70, the amount of money supplied by the women. Immediately after this conversation the six people left the apartment, the defendant and one male companion in one car and the women and one male companion in a second car.
The police officers followed the two cars toward the City of Tampa. On the way they radioed the sheriff's office of Hillsborough County for assistance, identifying and describing the two cars they were trailing. Subsequently, they lost the cars in the traffic but a few minutes later received radio information from the sheriff's office that the cars had been spotted and were being followed. The officers then drove to the Tampa police station, where they waited until they received information that the cars had finally parked adjacent to the Knotty Pine Bar in Hillsborough County. The St. Petersburg officers drove to the Knotty Pine Bar and were with the officers of the sheriff's office when the arrest of the defendant occurred.
The evidence also shows that when the two cars driven by the people who had been first seen in the apartment reached the Knotty Pine Bar, the women went into the bar and the car in which the defendant was riding left the scene. Approximately 30 minutes later the car returned, the defendant alighted and then met and talked with one of the women. Shortly thereafter a deputy sheriff of Hillsborough County placed the defendant under arrest, upon suspicion of having marijuana in his possession.
At the time of the arrest the arresting officer informed the defendant that he had reason to believe that defendant had marijuana cigarettes in his possession, and asked for leave to search the defendant's car. The defendant gave the officers permission to conduct the search and the cigarettes were then found concealed in a clarinet case between the front and back seats of the automobile.
Upon this set of facts the question is raised whether or not the evidence was sufficient to justify the arrest of the defendant without warrant and whether the subsequent search of his automobile was legal.
Section 398.03, Florida Statutes 1951, F.S.A., makes it unlawful for any person to possess, to have under his control, or to sell any narcotic drug except as authorized by the Narcotic Drug Law of Florida. With certain exceptions not necessary to be noted here, the plant cannabis sativa, smoked in marijuana cigarettes, comes within the terms of the Narcotic Drug Law. Section 398.02(12), Florida Statutes 1951, F.S.A. A violation of any of the provisions of the Narcotic Drug Law constitutes a felony under section 398.22, Florida Statutes 1951, F.S.A.
Section 901.15, Florida Statutes 1951, F.S.A., provides that a peace officer may arrest without warrant when he has reasonable ground to believe that a felony has been or is being committed and reasonable ground to believe that the person to be arrested has committed or is committing it.
There can be no valid basis for the contention that under the facts of this case the Deputy Sheriff of Hillsborough County did not have reasonable ground to believe that a felony was about to be committed in his presence by the person whom he subsequently arrested.
The personal knowledge acquired by the St. Petersburg police officers on the night of May 3, 1951, was certainly sufficient to *768 give them reasonable grounds to believe that a felony was about to be committed by the defendant. The police officers witnessed and heard the conversation in which the defendant was bartering to supply certain other persons who were present some material referred to as "stuff," the price of which was high, and which was to be used for smoking purposes. They heard it stated that it was risky to buy the "stuff," so risky in fact that the price of $20 a can could not be reduced on a $70 purchase. This coupled with the question by one of the men "Do you need some now? We have got some with us" and the subsequent decision that all persons in the party would drive to Tampa, where the defendant and his companions would get in touch with their "contact" and buy as many cans of the "stuff" as $70 would purchase, would lead anyone but a simpleton logically and reasonably to believe that at the very moment of the conversation the defendant and his companions were possessed of some prohibited article such as an opium or cannabis derivative, sometimes used illicitly for smoking purposes, and that they intended to acquire more of the contraband product for delivery to the women upon their arrival in Tampa.
As the record shows, the knowledge acquired by these officers was given by them to the deputy sheriff of Hillsborough County, who actually made the arrest. When, after being armed with this information, the deputy sheriff subsequently saw the two cars containing the members of the party arrive at the Knotty Pine Bar, the women go into the bar, the defendant's car leave the scene and finally return after a period of 30 or 40 minutes, and when it had returned the defendant alight therefrom and engage the women in conversation, he certainly had reasonable ground to believe that in pursuance of the arrangement made before the parties left St. Petersburg, the defendant had made his "contact," in Tampa, had purchased the "stuff", and had it on his person or in the car which he had been driving.
Under the facts known to the arresting officer at the time of the arrest, it would have been difficult for any perceptive police officer to have escaped the reasonable conclusion that the defendant was then and there engaged in a felonious enterprise. We must reject, therefore, the contention of the defendant that the arrest of the defendant was not based upon reasonable grounds and hence was unlawful.
The final contention made by the defendant is that the search of his car and the seizure of the contraband discovered therein was unlawful and hence that the seized articles could not lawfully be used as evidence against the defendant.
There is no merit to this contention. It is not every search of an automobile without warrant that is unlawful but only one that is unreasonable. Longo v. State, 157 Fla. 668, 26 So.2d 818. "The essence of an objection against an unconstitutional search or seizure is that it must be perpetrated by the officers in violation of the constitutional rights of the affected party, and done without his express or implied consent to the doing by such officers of what is complained of as an illegal deprivation of organic rights in the premises." Carlton v. State, 111 Fla. 777, 149 So. 767, 768.
The undisputed evidence in the case is that the defendant consented to the search of his automobile as the result of which the contraband was found. Under the law he has no ground for objecting that the articles found cannot be used as evidence against him, even if otherwise there may have been some ground for objection.
The judgment and sentence appealed from should be affirmed.
It is so ordered.
TERRELL, Acting C.J., THOMAS, J., and PATTERSON, Associate Justice, concur.