155 So.2d 396 (1963)
Joseph BRYANT, Appellant,
v.
STATE of Florida, Appellee.
No. 3643.
District Court of Appeal of Florida. Second District.
July 3, 1963.
Waldense D. Malory (of Finch & Mosley), Clearwater, for appellant.
Richard W. Ervin, Atty. Gen., Tallahassee; Robert R. Crittenden, Asst. Atty. Gen., Lakeland, for appellee.
SMITH, D.C., Associate Judge.
An information was filed charging the appellant with violation of gambling laws. He was duly arraigned, entered a plea of not guilty and was tried before the Court without a jury. Prior to trial, the defendant moved to suppress evidence secured as a result of a search or searches conducted by the police officers. On hearing, the motion to suppress was denied. At the trial, the defendant objected to the introduction of evidence secured as a result of the search or searches conducted by the police officers, and his objections were overruled. At the conclusion of the trial, the Court rendered a verdict of guilty. A motion for new trial was filed and denied. The defendant was adjudged guilty, sentenced to be imprisoned by confinement and committed to the custody of the Department of Corrections for a term of six months to four years, and he has appealed.
The record reveals that Melvyn G. Colman, a member of the Intelligence Division of the St. Petersburg Police Department assigned to vice control, testified that during the week prior to the 20th of July, 1962, he received confidential information from a *397 reliable source that appellant, known by the witness to be "a known and convicted Bolita peddler," would be in a certain area on Friday, July 20, 1962. The witness stated that he and two brother officers followed appellant's vehicle on the 20th of July, and that appellant proceeded through various densely populated colored sections in the City of St. Petersburg. Colman testified that appellant would park his automobile and enter various residences and businesses throughout the areas in which he made his stops.
Officer Colman stated that appellant's "pattern" of travel was exactly as the witness' confidential informant had indicated it would be.
Officer Colman related that on the following Friday, July 27, 1962, appellant's "pattern" was again repeated and that he was observed by the officers traveling through the various colored sections as he had done the previous week.
The following Friday (August 3, 1962), the day of the actual arrest, appellant was again observed by Officer Colman resuming the pattern previously followed by appellant on the two previous Fridays. On cross-examination, Colman testified that while he could not swear that appellant went into the exact same apartments on each of the three aforedescribed Fridays, witness Colman definitely stated that appellant parked his automobile in the same area "within a parking space or two, where he had parked the week prior."
During direct examination by the prosecuting attorney, Officer Colman was asked what was significant about the fact that appellant's aforedescribed actions occurred on Friday nights. Officer Colman stated that:
"Friday night is one of the most busy nights. In fact it is usually the night in which parties turn in Bolita, after they have picked up or sold all they are going to sell for the week. It is customary for them to either turn it in on Friday night or early Saturday morning. The behavior pattern of the Defendant was consistent with my experience as a police officer in investigating these matters." (Emphasis supplied.)
Officer Colman testified that on the third Friday (i.e., August 3, 1962), at approximately 6:15 P.M., the witness pulled up alongside of appellant's automobile on a public street in St. Petersburg. At this time appellant "* * * was advised by Lieutenant Hooper that we were police officers and would he hold up a minute."
Officer Colman stated that appellant pulled his automobile over to the curb and stopped. Officer Colman's superior, Lieutenant Hooper, then got out of the unmarked police cruiser and approached appellant's vehicle. Officer Colman testified that while Lieutenant Hooper was walking up to appellant's car, the witness observed appellant reach over the back seat of his automobile with his right arm. Officer Colman then got out of the police car and inquired of appellant what appellant had in his right hand; appellant replied that it was a laundry ticket. After appellant got out of his automobile, Officer Colman observed that appellant had something clenched in his left hand. When Colman asked appellant what was in appellant's left hand, appellant said "nothing" and pulled his hand away. After Colman's second request, appellant revealed a sheet of paper folded up, book size, approximately 8" x 10", containing figures written in red ink.
A search of appellant's person revealed some $480.00 in cash: $256.00 in his pocket, $171.00 in his wallet, $47.00 in his upper shirt pocket and $6.00 in change in his pants pocket. Appellant stated to the officers that he did not have "any more bolita" in his automobile and that he did not have "any bolita" at his home. Appellant further stated that he did not mind if the officers searched his home, and that he would accompany the officers.
Officer Colman stated that they found "sheets of paper bearing numbers" in a *398 bundle, lying on the rafters in a wash shed approximately six feet behind the rear door of appellant's house. Officer Colman stated that he also found a metal box on a shelf in the wash shed.
Appellant was then transported to police headquarters where he stated that the fruits of the officers search was "all the bolita that he had." Appellant stated to Officer Colman that "he was picking it up for his friends," and that he (appellant) "* * * had a friend in Tampa whom he went to visit on Friday nights, and that on Saturday morning prior he and his friend going fishing he went to a designated spot in Tampa and turned this Bolita in." Appellant denied any knowledge of the "bolita tickets and tally sheets which had been found in the shed." Colman related that appellant told the officers that "the pads and Bolita tickets found in the metal box on the shelf * * * was old stuff from back when he was writing in 1954 prior to his conviction." Appellant indicated to the officers that he "got back in the business" because "people wouldn't leave him alone." Appellant declined further comment, stating to the officers that he "already told you enough tonight to hang me if you want and I know better."
On cross-examination, Officer Colman stated that when he approached appellant's car prior to the latter's arrest, he could see a piece of paper in appellant's right hand and he was suspicious at that time that the piece of paper contained bolita.
Lieutenant M.D. Hooper, Chief of the Intelligence Bureau of the St. Petersburg Police Department, testified at the trial of the case at bar. After explaining his background in lottery investigations, Hooper testified that he was present at appellant's arrest. Hooper identified State's Exhibit No. 1 (a piece of paper which appellant had in his left hand immediately prior to his arrest) as containing "bolita or cuba numbers chosen to be bet upon and the amount of money bet upon, the number and overall sheet. A series of individual sales" and that the figures contained on said sheet would constitute "a series of sales." Hooper testified that in his expert opinion, the fact that a person had such a piece of paper would indicate that he was selling or writing bolita.
Lieutenant Hooper then explained to the court how a lottery was conducted and operated in the Tampa Bay area and correlated a portion of the amount of money which appellant had on his person at the time he was arrested, to the operation of a bolita business. Hooper stated that in his opinion the $47.00 found in appellant's shirt pocket were the proceeds of the sales (which from the "overall sheet", apparently totaled approximately $47.00).
Lieutenant Hooper also identified State's Exhibit No. 3 (a bundle of papers found on the shelf in appellant's wash shed) as memorandum of numbers bet in a bolita operation, bolita paraphernalia records, records of sales of bolita, and a tally sheet. However, Lieutenant Hooper indicated that these items were from sales, etc., during some week other than the week ending August 3, 1962.
In Miller v. State, (Fla.App. 1962) 137 So.2d 21, this Court stated that:
"The general rule concerning vehicular searches made without a warrant and not as part of a valid arrest is to the effect that such a search will be deemed reasonable if the searching officer, prior to making the search, had probable cause to believe that the contents of the automobile offended against the law. Section 933.19, F.S.A., adopting as the statute law of Florida the decision by the United States Supreme Court in Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790."
An officer may, without warrant, arrest a person when he has reasonable ground to believe that a felony has been or is being committed, and a reasonable ground to believe that the person to be arrested has *399 committed, or is committing such felony. Sec. 901.15, Fla. Stat. 1961, F.S.A.
"In cases in which an arrest without a warrant may be made by a police officer or private individual, of a person suspected of having committed a crime, the person making the arrest may act either upon facts within his own knowledge, or on those communicated to him by a responsible person * * *
"Probable cause for an arrest has been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. * * * It is not necessary for the officer to see and know that the law is being violated. Nor is it necessary for him to satisfy himself beyond question that a felony has in fact been committed, to justify an arrest without a warrant, though he may not act on unsubstantial appearances or unreasonable stories." 4 Am.Jur., Arrest, Sec. 48, pp. 32-34.
"The existence of `probable cause', justifying an arrest without a warrant, is determined by factual and practical consideration of everyday life on which reasonable and prudent men, not legal technicians, act. Probable cause justifying an arrest without warrant exists where the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." 4 Am.Jur., Arrest, Sec. 48, p. 7, 1962-63 Supp., citing Draper v. United States, infra.
In Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, it is said:
"`In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Brinegar v. United States, [338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879] supra 338 U.S. at page 175, 69 S.Ct. at page 1310. Probable cause exists where `the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288 [69 L.Ed. 543, 555, 39 A.L.R. 790]."
In Longo v. State, (1946), 157 Fla. 668, 26 So.2d 818, the Court stated:
"It is not every search of an automobile without warrant that is unlawful, but only one that is unreasonable.. What is a reasonable or valid search must be determined by the court upon due consideration of the circumstances and manner under which the search is made. Haile v. Gardner, 82 Fla. 355, 91 So. 376. When all of the evidence in the case is duly considered we think it manifestly plain that the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient in themselves to warrant men of reasonable caution in the belief that lottery tickets were being transported in the car which they stopped and searched. This would seem to justify the search and seizure that was made without warrant. See Haile v. Gardner, supra; Cortes v. State, 135 Fla. 589, 185 So. 323; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629, 74 A.L.R. 1407."
See also Brown v. State, (Fla. 1950) 46 So.2d 479.
*400 The information received from the reliable confidential informer was merely one fact which prompted the officers to believe that appellant was involved in a lottery operation. This factor, coupled with the officers' visual observance of the appellant acting in the same manner as one peddling bolita and known by the officers to be a known and previously convicted bolita operator, clearly gave such officers reasonable ground to believe that appellant was engaged in a lottery operation. Accordingly, appellant's arrest was valid and proper in all respects.
The record shows that the search involved here was reasonable. It was not error to admit the results of the search in evidence. There is ample evidence to support the court's finding the defendant guilty of aiding and assisting in setting up, promoting and conducting a lottery.
Affirmed.
KANNER, Acting C.J., and SHANNON, J., concur.