THOMAS, Justice
(dissenting).
Mathew Smith is here with a petition for certiorari seeking review of a decision of the District Court of Appeal, Second District, affirming a judgment of guilt entered in the Criminal Court of Record, Orange County, Florida.
He was charged with (1) possessing records, that is, tally sheets and accounts, evidencing a share in a lottery scheme, and (2) with being interested in a lottery some *226 times known as Cuba and bolita. At the outset of the prosecution, a motion was made in his behalf to suppress certain evidence seized by the officers which, he insisted, and now insists, was taken from him in violation of his Constitutional right to immunity from unreasonable search and seizure. Sec. 22, Declaration of Rights, Constitution of Florida, F.S.A., and Amendment IV of the Constitution of the United States.
It is necessary to go to the statement of facts appearing in the opinion of the District Court of Appeal, said by the court to be “undisputed,” and not challenged here in any important detail, to ascertain just what occurred when the spheres of activity of the petitioner and of the officers of the law coalesced.
Two plain-clothes men were patrolling the streets of Orlando near petitioner’s store in an unmarked police car when they saw the petitioner enter his automobile and drive away. The officers had “information” that his driver’s license had been revoked so they pursued and halted him for the purpose of substantiating the intelligence. This was the sole reason for stopping him. ' When they requested the petitioner to exhibit his license he reported that he had one but that it was in his store. Thereupon the officers, advised him they would have to arrest him for driving without a license. However, they did not purpose actually to place him under arrest; they meant only to give him a ‘traffic ticket’ and release him on his own recognizance.
It eventuated that these officers, being members of a vice squad and not primarily concerned with traffic infractions, had no tickets with them so they radioed for uniformed patrolmen and when they arrived asked them to prepare the notice of violation which one of the plain-clothes men would sign as arresting officer.
Up to this point the whole affair seemed quite inconsequential.
Then the petitioner informed the officers-that it was his fourth violation of the traffic laws and this induced them to invoke a directive of the municipal judge that fourth offenders be taken to the police station and formally charged with an offense.
The officers thereupon searched the petitioner for weapons, or, in police jargon,, ‘frisked’ him. This introduced the action which precipitated the assaults on the judgment. The police proceeded to empty his. pockets, and place the contents on the hood of one of the cars. They consisted of money, cash receipts and slips of paper containing certain numerals.
From these circumstances emerged the sole question whether or not the search of the petitioner was legal or reasonable. The District Court of Appeal thought the charge was not concocted as an excuse to search but that the search was conducted as an incident to a lawful arrest. So, said the court, our decisions in Burley v. State, Fla., 59 So.2d 744, Collins v. State, Fla., 65 So.2d 61; and Byrd v. State, Fla., 80 So.2d 694, were not apropos.
Apparently when petitioner’s car was stopped he was violating no traffic laws. The police said so.
It is true, as the District Court observed,, that under Sec. 322.15, Florida Statutes, F.S.A., every operator of an automobile is required to have in his immediate possession at all times a driver’s license and that under Sec. 322.32 it is a misdemeanor for a person to drive a car when his license has. been revoked. But it is equally true that under the former provision no person charged with failure to possess his license can be convicted if he produces in court a license that was valid at the time of arrest.
As I understand the opinion of the District Court of Appeal it was decided that the charge against the petitioner was not fabricated hence the cases already cited had no applicability. This comment is followed by the pronouncement that “an ar *227 rest under such circumstances [presumably flimsy excuses] will not warrant a search of the person, but a reasonable search and seizure may be made as an incident to a lawful arrest for a traffic violation.” (Italics supplied.)
Of course, the premise for the last clause and for the following, and concluding, paragraph of the opinion was the legality of the arrest or, as I construe the opinion, the original stopping of the petitioner and his subsequent detention. The court said the officers properly performed their duties in the first instance and that “any possible question that the officers were using this as a pretext is set at rest by the fact that the officers were originally only going to give the defendant a traffic ticket and released [sic]. It was only after learning of the previous traffic violations that the uniformed policemen searched the defendant incident to taking him into custody * * (Italics supplied.)
Hence there were two phases of the occurrence. The first was the halting of the petitioner to check his license; the second was the apprehension of the petitioner on the information he, himself, volunteered. Inasmuch as, according to the court’s opinion, the “sole” reason to halt him in the first place was to “check” his license, I assume that the search was considered connected with the second aspect of the incident when the officers learned that petitioner was a fourth offender. I have this impression despite the court’s comment that the officers told him they would have to arrest him for operating without authority for it is next said that they made no attempt to search him and did not intend to take him in custody but only planned to give him a traffic ticket and let him go on his own recognizance.
After this came his statement that this was his fourth offense and the search began. First, he was “ 'patted down’ ” to ascertain whether or not he was armed. Next, over his protest, his pockets were emptied and the contents were used in the prosecution of him for participating in a lottery.
The court, as has been observed at the outset, rejected the cited cases as being beside the point, but it was because of the principles announced in the Byrd case and in other related decisions that it was concluded confusion had arisen although the sets of facts are not identical. Therefore, we took jurisdiction. I think the court placed rather too much dependence on the element of pretext for apprehending. Without exploring the substantiality of the information the officers had in the first place, I think the relationship of the search to the eventual arrest, or determination to take the petitioner to police headquarters after he came forward with the information about his multiple infractions, instead of giving him a summons is a matter deserving serious consideration. He was ‘frisked’ to determine whether or not he was carrying weapons as, indeed, should have been done by the officers for their own protection, if they were to take him in custody. There is no occasion to dwell on that feature of the search.
But it is another matter figuratively to turn him upside down and make him disgorge whatever he had upon his person, against his will. At that point they certainly were not looking for a license. He had none and they knew he did not because he had told them so.
In City of Miami v. Aronovitz, Fla., 114 So.2d 784, we held, in effect, that officers were permitted to stop drivers for the examination of their licenses to the end that unauthorized persons loose on the highways with dangerous instrumentalities could be eliminated as hazards to the safety of the public with resultant reduction of the carnage of which everyone including the judges are aware. True, in that case no search was involved but this court warned “that because of this statute [Sec. 322.15 to which reference has already been made] the power to intercept an automobile and check a driver’s license does not a priori convey the power to search the vehicle.” And in the same case we said we were emphasizing the fact that we were making no decision *228 colliding with those in Byrd v. State and Collins v. State, supra.
In Byrd v. State the court dealt with the search of a car which the sheriff had overtaken on the highway and stopped because he had “information” that it was carrying whiskey. After examining the driver’s license the officer detected liquid dripping from the vehicle and recognized it as intoxicating liquor.
In the opinion this significant language was used: “We have repeatedly held [citing among other decisions the one in Collins v. State, supra] that a minor traffic regulation cannot be used as a pretext to stop a vehicle and search it for evidence of violation of other laws.” It was further said that “since the sheriff could not have used the checking of appellant’s license as a pretext to stop and search his vehicle, and since the avowed purpose of the sheriff in stopping the vehicle had no connection with the appellant’s license in any event, the trial court’s reasoning * * * [that the right to check the driver’s license carried with it the right to search] must necessarily fail.” (Italics supplied.)
I pause to say that I consider the case just analyzed to be an even stronger one in favor of the search than are the present facts. The sheriff had a “tip” that liquor was being transported and this was confirmed when the vehicle began to leak. Yet we reversed the decision. We are not advised that in the present case the officers had the remotest idea that the petitioner was carrying lottery paraphernalia as subsequently developed from the search.
In Collins v. State, supra, we decided that an officer could not stop a car on the highway because of some purported traffic violation and incidentally search it. We further held that when impossible or impracticable to obtain a search warrant, the officer must be prepared to show he had information which would have justified the issuance of a warrant had he applied for one. This thought was prompted by the high degree of mobility of an automobile and the difficulty of apprehending violators of the law if in each instance it would be necessary to secure a warrant before intercepting a known violator who was fleeing by car.
In the Burley case we determined that when there was no reason to arrest the defendant except for a traffic violation which was unjustified, a search as an incident to the arrest was illegal although the defendant was seen cramming lottery tickets into his pockets.
My analysis of the cases cited and of this one impels me to conclude that although an officer may stop a motorist and examine his license in the protection of the public against unauthorized operations he may not, if the driver is found to possess no license, search his person on the theory that the car is consequently being operated in the officer’s presence in violation of law, gather evidence of a totally unrelated offense not known, or suspected at the time of the halting and sustain the action under the general rule that a search is valid if made as an incident to a lawful arrest. There are at least two things wrong with such procedure. It ignores the guaranties of the Constitutions and it countenances the idea so often rejected by the courts, i. e., that the end justifies the means.
However, my view is not to be construed as one that once an officer intercepts a motorist to inspect his driver’s license or for any other lawful reason he may not conduct a search if there comes to his plain view evidence indicating that the operator is then engaged in an unrelated violation of law such as was the case in State v. Simmons, Fla., 85 So.2d 879, Brown v. State, Fla., 91 So.2d 175, and Self v. State, Fla., 98 So.2d 333. See also Longo v. State, 157 Fla. 668, 26 So.2d 818.
The decision of the District Court of Appeal seems to me to create confusion because of disharmony with the underlying *229 principles of the cited cases so I am impelled to dissent from the order discharging the writ of certiorari
ROBERTS and HOBSON (Ret.), JJ., concur.