113 So.2d 582 (1959)
Emory HOUSTON, Appellant,
v.
STATE of Florida, Appellee.
No. B-16.
District Court of Appeal of Florida. First District.
July 9, 1959.
*583 T.J. Jennings, Jr., and James T. Norton, Greencove Springs, for appellant.
Richard W. Ervin, Atty. Gen., and Odis M. Henderson, Asst. Atty. Gen., for appellee.
FUSSELL, CARROLL W., Associate Judge.
The appellant Houston was tried by a jury and convicted of violation of the beverage laws in Clay County, Florida, and thereafter sentenced to imprisonment for a period of two years. He questions the legality of a search of his barn without a valid search warrant and the admission into evidence of the fruits of such search.
Under the facts of this case three beverage agents and a deputy sheriff were making a routine search on foot for moonshine stills in the unfenced wooded territory behind appellant's residence during the morning of this day. They went to the site of a still which they had discovered some two years before, but found no still. No criminal charges against anyone were made with regard to that still.
The Houston residence was located 1.1 mile west of highway 220, accessible only by a dirt road running south from highway 220. There was no other residence on this dirt road, which dead-ended at the Houston residence. Enclosed with appellant's home was a barn, about 40 feet south of it, and another small building, all being within the curtilage. The premises were not fenced on the side next to the road. There was a fenced field behind the barn and between the barn and the wooded territory where the still had formerly been found.
The agents during this morning crossed into this field and while in it smelled mash, wort and wash, and one of the agents went up to the field fence, which was about 6 feet to the rear of appellant's barn, and could distinctly smell the odor of mash, wort and wash coming from the barn. There was an open window on this side of the barn, but it was too high for the agent to see inside the barn or what was in it. The officers then left to obtain a search warrant, but were unable to find the County Judge immediately or a Justice of the Peace in the district where the Houston residence and barn was located, but did find a Justice of the Peace from another District, and secured from him a search warrant. Four beverage agents, three deputy sheriffs, and a movie photographer then went back to the premises, and two of the officers went to the front door of the residence and knocked. In his testimony, the officer said:
"Q. What did you do?
"A. I went up to the front door with Deputy Sheriff Smart and knocked on the door and no one answered his knock; he knocked several times even after establishing the fact there was no one there, and then we went around the house and came to the barn.
"Q. All right. And then did you go in the barn?

*584 "A. Yes, sir, I went around to the south side of the barn. And immediately upon getting near the barn the odor was so strong * * *."
This officer then went to the south side of the barn next to the fence and pulled himself up into the window where he could see this still and fermenting mash. An officer from the other car testified that he went to the northwest corner of the barn, and that he did smell a strong odor of fermenting mash coming from the barn, but could not see in the barn, so he went to the other side and saw the still from this barn door. The latches on the barn doors were then lifted and the officers went inside. They did not find the required signs posted on the walls as provided by law for the operation of a licensed distillery. They found in a separate enclosed room in the barn a number of 5-gallon bottles and cans covered with a burlap, which contained 295 gallons of unstamped moonshine liquor. The still, the bottles, except one 5-gallon bottle, and cans holding the moonshine liquor and the vats and barrels holding the mash were then destroyed with axes, and the mash and moonshine liquor was poured onto the ground. The appellant was arrested the following day when he voluntarily went to the Sheriff's office.
The information filed against the appellant contained three counts. Count one charged him with possession of 295 gallons of moonshine whiskey; count two with possession of an unlicensed still; and count three with possession of unlicensed mash, wort and wash.
The Circuit Judge entered an order quashing the search warrant and suppressing the evidence upon a motion therefor by the appellant, the State having admitted that the Houston residence and its curtilage were not located within the district of the Justice of the Peace who issued the search warrant. Yet, at the trial the beverage agents were permitted to testify, over the repeated objections of the appellant, that they found the still, the mash, wort and wash and the bottled moonshine liquor in the barn of the appellant. Also over the objection of the appellant, the court admitted into evidence one 5-gallon bottle of moonshine whiskey which was found and seized during the search.
The Circuit Judge granted a motion for new trial as to count one of the information, and denied it as to counts two and three.
The evidence is undisputed that: (1) The officers did not have a valid search warrant; (2) there was no one on the premises at the time of the search except the seven officers and a movie photographer; (3) no one was arrested prior to or at the time of the search; (4) the appellant was the only one arrested in connection with this offense and he was not arrested until the next day; (5) this was not a routine search and investigation of a licensed distillery under authority of the Statutes; and (6) the search was not made by voluntary consent of anyone.
The sole question, therefore, is: Was the search reasonable under the circumstances? Unreasonable searches in Florida are prohibited under Section 22, Bill of Rights, Florida Constitution, F.S.A.:
"§ 22. Searches and seizures.  The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches, shall not be violated and no warrants issued, but upon probable cause, supported by oath or affirmation, particularly describing the place or places to be searched and the person or persons, and thing or things to be seized."
The 4th Amendment to the Constitution of the United States, and Section 22 of the Bill of Rights of the Florida Constitution are the same in meaning and almost identical in wording. For this reason the ruling of the United States Courts on unreasonable searches is generally accepted *585 as authority for a similar ruling in Florida.
Florida, the same as the United States, follows the exclusionary rule which, simply stated, means that if the search and seizure is unreasonable the evidence seized is inadmissible. Melton v. State, Fla., 75 So.2d 291; University of Florida Law Review, Vol. 8, No. 3, page 288. See also Alexander v. State of Florida, Fla.App., 107 So.2d 261, 263, which quotes with approval from 79 C.J.S. Searches and Seizures § 51, p. 809, as follows:
"A search and seizure illegal in its inception cannot be purified into legality by nature of the fruit which it produces, for the products of the wrongful search carry the taint of the illegal search and therefore cannot be used as evidence against the victim."
Practically the identical principles of law involved in this case has been ruled upon in the very recent case of Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 1256, 2 L.Ed.2d 1514. In this case the beverage agents received information that an illicit distillery was being operated in defendant's farm house. They checked and found spent mash in a hollow behind the house. The mash came from a rubber hose which led towards the farm house. The officers then left and obtained a day-time search warrant. Under the federal law, however, search under this type of warrant could not be made in the night-time. The officers came back during the afternoon and checked again and saw the mash coming from the hose. They smelled the hot mash coming from the direction of the house and heard voices and a blower burner of the type used in distilleries coming from the direction of the house and heard the moving of heavy objects from within the house. They kept waiting, however, and made no attempt to search the premises during the day-time, and about 9:00 o'clock P.M. after dark they arrested two men in a truck which was coming from the farm yard and which had mired itself in the mud, and upon search of this vehicle discovered in it 414 gallons of non-tax paid liquor. The wife of the defendant drove up about that time and got in the doorway of defendant's residence and requested to see the search warrant. The officers brushed past her and took a shot gun from her young son and told her that they did not need a search warrant. The defendant's wife, children, father and brother were in the house at the time, but none of them were arrested. The defendant was arrested about one hour later when he returned home. Upon entering the house the officers immediately made a general search of the house and seized a boiler, fuel burner and 15 barrels of mash which were admitted in evidence against the defendant. The search and seizure were made prior to the time the defendant returned and was arrested, the government claiming that the search was reasonable and that the crime was being committed in the presence of the officers or that they had probable cause for that belief. The District Judge found that the facts and circumstances within the knowledge of the officers were sufficient in themselves to warrant a man of reasonable caution in the belief that an offense was being committed and, therefore, the court found that probable cause existed at the time the search was made. In its opinion, reversing the District Court, the Supreme Court said:
"(2) Although it must be recognized that the basis of the two lower court decisions is not wholly free from ambiguity, a careful consideration of the records satisfies us that the search and seizure were considered to have been justified because the officers had probable cause to believe that petitioner' house contained contraband materials which were being utilized in the commission of a crime, and not because the search and seizure were incident to petitioner's arrest. So viewed the judgments below cannot be squared with the Fourth Amendment to the *586 Constitution of the United States and with the past decisions of this court.
"(3, 4). It is settled doctrine that probable cause for belief that certain articles subject to seizure are in a dwelling cannot of itself justify a search without a warrant. Agnello v. United States, 269 U.S. 20, 33, 46 S.Ct. 4, 6, 70 L.Ed. 145; Taylor v. United States, 286 U.S. 1, 6, 52 S.Ct. 466, 467, 76 L.Ed. 951. The decisions of this Court have time and again underscored the essential purpose of the Fourth Amendment to shield the citizen from unwarranted intrusion into his privacy. * * * Were federal officers free to search without a warrant merely upon probable cause to believe that certain articles were within a home, the provisions of the Fourth Amendment would become empty phrases, and the protection it affords largely nullified."
In this case the government also contended that the officers entered the premises for the purpose of arresting the defendant upon probable cause to believe that he was guilty of a felony and that he was then in the house. Consequently the officers' entry was justified, and once in the house while searching for petitioner they could properly seize all contraband material in plain sight. The Supreme Court found without deciding this question of law that the testimony of the federal officers makes clear beyond dispute that their purpose in entering was to search for distilling equipment and not to arrest the petitioner.
The evidence in the Jones case goes far beyond that in the instant case in determining not only that there was illicit material on the premises, but also that actually it was then in operation by parties unknown who were then on the premises, since the evidence shows that the agents heard the burner going and not only smelled the odor of the fermenting mash, but actually saw and tasted it as it came from the rubber hose. They also heard heavy objects being moved on the premises and captured illicit moonshine whiskey which was being moved in the truck from the premises. If, as contended by the State in this case, the mere smelling of fermenting mash coming from the premises is sufficient to authorize the officers to search the premises of the appellant in his absence without a search warrant, without receiving his consent and without arresting him, then it would seem that the issuance of a search warrant was useless and any search, particularly if it produced results, must hereafter be held a legal and reasonable one. Contrary to this view, it would appear that there could be no more flagrant violation of Section 22 of the Bill of Rights than to permit the invading of the privacy of appellant's home and the buildings within its curtilage without any determination whatsoever by any proper judicial officer that there was probable cause for such search and the issuance of a legal search warrant upon which the search could be made. There was certainly no emergency shown in this case whatsoever warranting an immediate search without proper search warrant of appellant's premises and in his absence, or any reason offered why proper search warrant could not have been obtained.
We now come to the contention of the State that before the defendant could object to the search being illegal he must establish that the property searched was his or that he was in possession of it at the time. We do not feel that the facts in this case warrant the application of this rule. In the first place there was absolutely no evidence whatsoever to connect the defendant with the ownership or possession of the illegal still, mash and moonshine whiskey, other than that he was the owner of the premises. The State admits that in the presentation of evidence on the motion to suppress that the appellant maintained and proved that he was the owner and in possession of the premises, but the State insists that proof of ownership *587 on a hearing on motion to suppress is not evidence and cannot be considered in the trial for the offense itself and that it is incumbent on appellant to prove his ownership or possession before he can object to a search as being illegal. The testimony of the witnesses for the State is filled with statements evidencing the ownership and possession of the premises by the appellant. In fact the State clearly recognized the necessity of establishing the ownership of the premises by the appellant in order to prove its case. The first witness for the State testified as follows:
Tr. p. 13:
"A. * * * this road here, this lane leads to the residence of Emory Houston. This building is not drawn to scale by any means, but will probably give you a rough idea of the lay out there at Mr. Houston's."
Tr. p. 15:
"A. Upon arrival at the Houston residence I got out of the car and went directly to the north side of the barn."
Tr. p. 24:
"A. * * * I looked at the tire marks and I looked at the tracks of this truck parked by Mr. Houston's residence and they matched."
Tr. p. 26:
"A. * * * While there and prior to our having destroyed the distillery, Agent Bennett and Deputy Sheriff Padgett left Mr. Houston's residence in search of Mr. Houston."
Tr. p. 31:
"A. * * * Also during the course of this conversation Mr. Houston said that he has lived all his life at the residence where we found the still in the barn."
"Q. Is that all the conversation? A. With me, yes.
"Q. That's the conversation you had with him there at that time? A. Yes, sir.
"Mr. Gordy: That's the conversation we want to put in to show ownership of the place  that he had lived there all the time. I realize that you have stipulated to it, but I think on my case in chief I ought to put it in. (emphasis supplied)."
Appellant's attorney objected on the ground that this was immaterial and not a statement freely and voluntarily made.
The court ruled as follows:

The court: "I think it will be proper to let it come in.
"A. Mr. Houston stated to me on the same day and the same occasion that he had lived in the house all of his life.
"Q. Did he say what house?
"A. Well, that's the house that I referred to as the residence on the north side of the barn where we found the distillery."
We think that this evidence offered by the State proved that the appellant was the owner and in possession of the premises, and, in fact, without this evidence there was nothing whatsoever to connect the appellant with this offense. Also, no evidence was offered by the appellant denying ownership and possession of the premises.
We hold that the court erred in admitting at the trial evidence obtained through an unlawful search, and the judgment of the lower court is reversed.
WIGGINTON, C.J., and CARROLL, DONALD, J., concur.