Walter R. Hart, J.
The validity of the judgment convicting defendant of the misdemeanors of book-making (Penal Law, § 986) and of possession of book-making records (§ 986-b) is contingent on the legality of the search and of the seizure of the exhibits admitted over defendant’s objection at the trial. To sustain the legality of the search and of the seizure the People rely first on a search warrant issued on January 30, 1962 and second on the theory that there had been a lawful arrest for the commission of these misdemeanors in the presence of the arresting officer so that the subsequent incidental search and seizure were authorized by law.
The search warrant authorized the search of premises of the Nessquak Club, Inc., at 37-06 31st Avenue, Astoria and the seizure of gambling paraphernalia therein. It was predicated on an affidavit by Police Officer O’Connor and his statement therein that the “facts” upon which his affidavit was based was information from a confidential, reliable informant that illegal book-making activities were being conducted at the premises by a person known as Pete; that “ on two separate occasions ” informant placed bets by phone with a party who identified himself as Pete. The affidavit then refers to convictions of three persons brought about by information furnished previously by the same informant.
The Fourth Amendment to the United States Constitution and section 793 of the Code of Criminal Procedure authorize a search and seizure by a warrant issued on an affidavit showing “ probable cause ”. In reviewing the issuance of the warrant and the affidavit submitted in support of it, the court must be governed by the principle stated in Sgro v. United States (287 U. S. 206, 210) that “ The proceeding by search warrant is a drastic one. Its abuse led to the adoption of the Fourth Amendment, and this, together with legislation regulating the process, should be liberally construed in favor of the individual.”
The affidavit upon which this warrant was issued is exclusively based on hearsay. While hearsay is admissible on the issue of probable cause (People v. Loria, 10 N Y 2d 368, 374; Draper v. United States, 358 U. S. 307; Brinegar v. United States, 338 U. S. 160; Jones v. United States, 362 U. S. 257), it is still an open question as to whether an affidavit which is based exclusively on hearsay is sufficient. Thus, in United States v. Ramirez (279 F. 2d 712, 715 [Ct. of App. 2d Cir.]) the court stated: “ In addition, Jones [367 U. S. 257] may require that *891 the affidavit include some factual information independently corroborative of the hearsay report.”
We need not, however, resolve that question at this time. Suffice it to say that the affidavit failed to establish probable cause for the issuance of the warrant at the time it was signed by the Magistrate, since it failed to negate the possibility that the information furnished by the informant was “ stale ”. The affidavit does not state when the informant purportedly made the two bets. In Sgro v. United States (287 U. S. 206, 211) the court noted: “ The proof supplied [for the issuance of the warrant] * * * must speak as of the time of the issue of that warrant. ’ ’ In Waggener v. McCanless (183 Tenn. 258, 262) the court stated: 1 ‘ In arriving at ‘ probable cause ’ one essential element * * * is that of the time at which the informant of the officer secured the information on which the latter applies for the warrant. Such time is essential and must appear on the face of the affidavit, and of course, the nearer it is to the time of the application the more effective it is to justify a conclusion of probable cause.” (See, also, Welchance v. State, 173 Tenn. 26; Everett v. State, 182 Tenn. 22; Dandrea v. United States, 7 F. 2d 861; United States v. Ramirez, 279 F. 2d 712 and authorities collated in Ann. 162 A. L. E.1406.)
The People contend that even though the warrant was void the search and seizure were resasonble since they were made subsequent to a lawful arrest for misdemeanors committed in the presence of the arresting officer, Michael O’Connor. That witness testified that prior to the execution of the warrant on January 30, 1962 he and Falk, a fellow officer, went to the roof of certain premises at the rear of 37-06 31st Avenue in Astoria. The ground floor of the latter premises, where the arrest and seizure took place, is occupied by a social club while the upper space is used for residential purposes. He climbed down five or six feet from the roof of the adjacent building onto the top or 1 ‘ ledge ” of a wall estimated to be at one time 10 feet and another time 8 feet above the ground. The wall or ledge is appurtenant to and part of the premises housing the social club. It is at right angles to the side wall of the building at the rear so that with the side wall of an adjoining building it forms an enclosure for the back yard of the premises wherein the arrest and search and seizure took place. The ledge or top of the wall as it meets the subject premises is adjacent to the very top of a window, the upper portion of which contained 6 panes of glass about 8 inches by 8 inches. The upper center pane was missing and a rag had been inserted in its place. While there were curtains on the window they did not cover the center of it. *892 The window was in the kitchen of the club premises. O’Connor testified that he stood on the wall about a foot from the window at which point he was only five feet from the defendant who was in said kitchen and saw him and heard him repeat two telephone messages in a period of about 20 minutes, in which defendant identified himself as “Pete”, and accept two specific bets on horses that were running that day, writing them down on a piece of paper. (Falk testified that while he remained on the roof of the adjacent building O’Connor in fact knelt on the edge of the wall of the premises adjacent to the window, supporting himself by holding onto the rear wall.) After overhearing defendant’s conversations O’Connor executed the warrant, arrested the defendant and seized certain exhibits which were admitted in evidence over defendant’s objections.
It is our conclusion the evidence concerning defendant’s activities observed by the arresting officer in the back yard while on the wall of the premises, was the product of an unlawful trespass — an interference with defendant’s right of privacy and violative of the protection afforded him by the Fourth Amendment to the United States Constitution. (Hobson v. United States, 226 F. 2d 890 [Ct. of App., 8th Cir.]; Brock v. United States, 223 F. 2d 681 [Ct. of App., 5th Cir.]; Polk v. United States, 291 F. 2d 230 [Ct. of App., 9th Cir.]; McDonald v. United States, 335 U. S. 451; People v. Perlman, 12 N Y 2d 89; Silverman v. United States, 365 U. S. 505.)
A “ search ” has been defined as follows: “ To seek; to look or make search for ” (Webster’s New International Dictionary, [2d ed.]). Thus what one seeks with his eyes or seeks to hear may be a search. When unauthorized and accomplished by a trespass such search constitutes a violation of the constitutional safeguard of a man’s right to privacy (Brock v. United States, 223 F. 2d 681, supra; Silverman v. United States, 365 U. S. 505, supra). Thus, in Brock, the court stated (p. 685): “ To begin with, the agents, when they appeared outside Brock’s bedroom window, were in violation of his rights under the Fourth Amendment. Whatever quibbles there may be as to where the curtilage begins and ends, clear it is that standing on a man’s premises and looking in his bedroom window is a violation of his ‘ right to be let alone ’ as guaranteed by the Fourth Amendment.”
In Silverman v. United States (supra) police officers were permitted, over defendant’s objection, to testify with respect to incriminating conversations between defendants and overheard by the officers by means of a “ spike mike ”. This electronic device had been inserted through the party wall of the adjoining building into a heating duct, thereby converting the *893 heating system into a conductor of sound. The Supreme Court reversed the conviction and dismissed the complaint since the eavesdropping had been accomplished by means of an unauthorized physical encroachment, i.e., a trespass or physical invasion of defendant’s premises. In passing it may be noted that in a concurring opinion Mr. Justice Douglas expressed the view that there could be a violation of the Fourth Amendment without a trespass and that a “wrong [is done] * * * when the intimacies of the home were tapped, recorded, or revealed ’ ’ (p.513).
In the case here under review, since the search warrant was void the intrusion by the police officer on the wall of the premises in which the social club was located was unlawful and a trespass. What he saw and heard constituted an illegal search. The subsequent seizure of the paraphernalia was unauthorized and furnished no basis for an arrest for the misdemeanors claimed to have been committed in the officers’ presence. The facts here are parallel to those in People v. Perlman (12 N Y 2d 89, supra). There, a police officer, after telephoning bets to defendants, went to the premises located in an office building. He stuck a pencil through a mail slot in the door and saw and heard defendants converse over the telephone about placing bets. He admitted himself with a passkey, arrested defendants and made a search. The majority of the court held that these facts did not justify the entry and the arrest.
As may be seen from Perlman, the circumstance that defendant here was at a social club rather than in his home, he was nevertheless protected by the aegis of the Fourth Amendment. (See, also, People v. Malinsky, 36 Misc 2d 204, 207.) Nor is it of any consequence that defendant was not the owner of the premises or the tenant in occupancy since the People endeavored to establish a nexus between him and the items seized. (Jones v. United States, 357 U. S. 493; McDonald v. United States, 335 U. S. 451; People v. Perlman, supra; Code Crim. Pro., § 813-c; People v. Smith, 35 Misc 2d 533.)
Only exceptional circumstances may warrant an intrusion into premises and a violation of the right of privacy without a valid search warrant. No such circumstances may generally be shown in crimes that are merely malum prohibitum. (McDonald v. United States, 335 U. S. 451; Johnson v. United States, 333 U. S. 10.)
The judgment of conviction herein should be reversed and the complaint dismissed.
Brown and Di Giovanna, JJ., concur.
Judgment reversed, etc.