151 So.2d 841 (1963)
Russell McCain, Appellant,
v.
STATE of Florida, Appellee.
No. 3307.
District Court of Appeal of Florida. Second District.
March 27, 1963.
Rehearing Denied April 26, 1963.
*843 Dick Lee and Charles Wendell Harris, Sarasota, for appellant.
Richard W. Ervin, Atty. Gen., and Bruce R. Jacobs, Asst. Atty. Gen., Tallahassee, for appellee.
KANNER, Acting Chief Judge.
Appellant, Russell McCain, defendant below, cites as reversible error on the part of the trial court the admission of certain evidence. The appeal is from the judgment of conviction whereby he was found guilty of conducting a lottery.
The father of appellant, owner of the McCain Furniture Store in Bradenton, Florida, suffered a stroke in 1960 and appellant became manager of the store. Suspicious activities in connection with appellant's operation of the store, including frequent comings and goings which appeared to have no relation to the furniture business, led to an investigation and observation by a detective of the Bradenton police force in the latter part of 1960. This detective turned over to the sheriff's office all information gleaned by him for further investigation; and the store, as well as appellant, was placed under surveillance by representatives of the Manatee County sheriff's office for a period of several weeks. Because of the nature of the circumstances brought to light by the investigation, along with reliable information supplied by informers, the law enforcement officers became convinced that appellant was conducting a lottery commonly known as "Cuba" or "Bolita". In August of 1961, search warrants were obtained in order that officers of the law might search the store, including appellant's person, and a trailer and cabana which he had rented. These warrants were executed; as a result, much lottery paraphernalia was obtained and later utilized as evidence at the trial.
The State called and examined some twenty witnesses and introduced an estimated forty-eight exhibits. Four of the witnesses testified that they had worked for appellant in selling bolita, and one said that he was employed at the furniture store and that he picked up lottery tickets as a part of appellant's bolita operation. No evidence at all was offered by appellant.
The first point on appeal asserts that the court allowed hearsay testimony to show that appellant was known as Nelson and that this had a prejudicial effect. Appellant had rented a trailer and cabana from a woman whose brother collected the rent. The brother was asked by the State by what name appellant was known to him. The answer was "Nelson, I believe." Appellant did not object. When asked other questions on subsequent cross-examination restricted to the manner in which the witness came to know appellant as Nelson, it was revealed that this knowledge was based upon what his sister had told him. Appellant then requested that the testimony be stricken as hearsay. The court's refusal to do so is cited as error upon the contentions that an alias may not be proved by hearsay evidence and that the State's only purpose in adducing this testimony showing that appellant *844 was known by an alias was to poison the minds of the jurors. There is no question involved with respect to the identity of appellant but only as to prejudice which he claims was created through questions eliciting that he had designated himself by another name. Even if it were considered technically that the parcel of testimony protested by appellant should have been excluded, failure of the trial judge to do so under the facts of this case does not constitute harmful error.
Appellant complains under point two that testimony of a particular witness given on behalf of the State had been coerced by a threat of the state attorney and that this constituted misconduct which required the granting by the court of appellant's motion for mistrial. The witness testified that, prior to trial, the state attorney adjured her that she was not "telling the truth" and stated that she would be "remembered." She, however, unequivocally admitted during the trial that the state attorney had asked her "* * * to tell the truth and nothing but the truth in this case." This incident as explained by the witness does not establish coercion and misconduct.
Finally, by point three, appellant characterizes as illegal the taking of lottery equipment from a certain 1951 Chevrolet automobile and asserts that the items procured in the course of that search and seizure were inadmissible as evidence against him. It may be noted that no contention is made nor question raised in this appeal against the search of and seizure from the trailer and cabana which had been rented by appellant and used in carrying on his bolita operation, nor is any complaint made with respect to the search and seizure at the McCain store.
Upon arrival of the officers at the McCain Furniture Store to execute the search warrant, the vehicle in question was parked next to the store about a foot from the building. The officer who searched it, a deputy sheriff, was one who had been actively participating in the investigation and surveillance and so had knowledge of the automobile and its use, both by appellant's "pick up man", Boaz, by appellant, and by the two together, in going to and fro. When he walked up to the automobile and looked inside, he could observe in plain view on the back seat certain lottery paraphernalia, including an adding machine, pads, brown paper sacks with letters "OJA" on top, ball point pens of different colors, a roll of pencils, and a lottery ticket lying on top. Perceiving these items, he reached inside through a hole in the vent window which had been previously broken out, opened the door, removed the lottery equipment, and searched the car.
The record reveals that the search warrant for the McCain Furniture Store authorized a search of the premises and of appellant's person if he were in or on the premises. Although the automobile was frequently used by appellant, it was owned by and licensed to Simon Boaz; and the deputy sheriff who conducted the search testified of prior knowledge that lottery receipts were being carried in the car.
Not every search made without a warrant is unlawful but only the search that is unreasonable. What constitutes reasonable and valid search is to be determined by the court through due consideration of the circumstances and manner in which the search is made. Longo v. State, 1946, 157 Fla. 668, 26 So.2d 818; Starks v. State, Fla.App. 1959, 108 So.2d 788. In dealing with "probable cause" for search and seizure without a warrant, a court deals with probabilities which are not technical but which are factual and practical considerations of every day life upon which reasonable and prudent men act and not legal technicians. The essence of "probable cause" is a reasonable ground for belief of guilt; and the court in determining whether there was probable cause to make a search without a warrant must first determine sufficiency of knowledge by the searching officer by comparison to what a reasonable man, knowing all the facts which the searching officer *845 knew, would have believed under all of the circumstances. Gispert v. State, Fla.App. 1960, 118 So.2d 596, cert. denied, Fla. 1960, 122 So.2d 782. The facts here adequately meet the test required for probable cause to search and seize contraband without a warrant. The question of illegal search and seizure concerns only the particular Chevrolet automobile. The facts indicate knowledge of appellant's activities gleaned from the surveillance and information from informers, including his relationship with Boaz, who also worked for him in the furniture store, use of the Chevrolet by appellant and Boaz, knowledge that lottery receipts were being transported in it, and visibility of the lottery paraphernalia prior to the search and seizure. In this connection, compare the cases of Joyner v. State, 1946, 157 Fla. 874, 27 So.2d 349; Gaskins v. State, Fla. 1956, 89 So.2d 867.
Over and beyond this, immunity to an unreasonable search and seizure is a privilege which is personal to the one whose right has been invaded. This immunity cannot be invoked to protect one in commission of a crime but serves only as a constitutional guaranty against unreasonable search and seizure. Generally, an accused cannot protest a wrongful search and seizure of premises or property which he does not own or lease or lawfully occupy or possess or in which he has no interest. See Mixon v. State, Fla. 1951, 54 So.2d 190; Alexander v. State, Fla.App. 1958, 107 So.2d 261. Appellant had the burden of proving that, at the time of the search, he owned or rightfully possessed or had a lawful interest in the vehicle searched. Tribue v. State, Fla.App. 1958, 106 So.2d 630 and Testasecca v. State, Fla.App. 1959, 115 So.2d 584. As to guaranty of freedom from an unreasonable search of and seizure from an automobile, there is a recognized difference between this and the search of a dwelling or other structure. The modern trend of authority tends to narrow the concept of immunity against search and seizure when applied to a motor vehicle employed as an aid to commission of crimes, whether for transportation of the criminal or the fruit of the crime. Cameron v. State, Fla.App. 1959, 112 So.2d 864. Appellant offered no witnesses nor evidence of any sort, and there is no foundation for any claim by him to show a lawful interest in or possession of the automobile which could afford him the right to contest the validity of the search and seizure under the immunity doctrine.
We find no error upon which this court could predicate a reversal of the protested judgment of conviction.
Affirmed.
WHITE, J., and McCORD, GUYTE P., Jr., Associate Judge, concur.