181 So.2d 671 (1966)
STATE of Florida, Petitioner,
v.
Hugh F. COYLE, Jr., Respondent.
No. 6162.
District Court of Appeal of Florida. Second District.
January 19, 1966.
Earl Faircloth, Atty. Gen., Tallahassee, and Clair A. Davis, State Atty., St. Petersburg, and George R. Georgieff, Asst. Atty. Gen., Tallahassee, for petitioner.
No appearance for respondent.
KANNER, Judge, (Ret.)
An information was filed against Hugh F. Coyle, Jr., respondent, charging him with commission of a felony by engaging in a crime against nature with one Willie B. Heintz in violation of section 800.01, Florida Statutes, F.S.A. The State of Florida has petitioned for writ of certiorari directed to an order granting Coyle's motion to suppress the evidence of two police officers, which order was entered consequent upon a proceeding had on the motion.
At the outset, there arises the question, whether petitioner can avail itself of the remedy invoked. The order does not possess the attribute of a final judgment but is interlocutory. An examination of the record discloses that the evidence suppressed was necessary for use at the trial *672 to establish commission of the offense charged. No trial of the cause was had, but the hearing on the motion to suppress was preliminary to it. The common law writ of certiorari is a discretionary writ, and an appellate court will review an interlocutory order in law only in exceptional cases, such as where there has been a departure from essential requirements of law and it clearly appears that there is no full, adequate, and complete remedy by appeal after final judgment. Huie v. State, Fla. 1957, 92 So.2d 264; State v. Andres, 1941, 148 Fla. 742, 5 So.2d 7; and Kauffman v. King, Fla. 1956, 89 So.2d 24. Petitioner urges that the order should be quashed because it does not conform to the essential requirements of the law and that, since no right of appeal exists, its only remedy is through resort to certiorari. The case is a criminal one and not civil or equitable in its nature. We agree that the state has no right of appeal; and, under the situation to which we shall advert, the method pursued is the proper one.
The sole basis of respondent's motion to suppress was his contention that the evidence and alleged knowledge by the police officers was secured by virtue of an unreasonable search and seizure and in a manner forbidden by section 22 of the Declaration of Rights of the state Constitution, F.S.A., in that the entire alleged observation was through a grill work installed in the public restroom on Municipal Pier in St. Petersburg at the instance of the police department or other officials of the city for the specific purpose of spying on its inmates. Pondering this premise, we look first to the stipulated facts agreed upon between the parties for the purpose of the trial court's consideration of the motion to suppress.
At approximately 8:08 p.m. on September 22, 1964, two police officers of the City of St. Petersburg had occasion to be present in a men's restroom of the St. Petersburg Municipal Pier for the purpose of checking the restroom for any possible illicit activities. Upon their entrance, they observed Willie B. Heintz in a stall without a door and, while they were standing at the urinals, saw him peeking at them through a hole in the stall wall. Based on their long experience as vice squad members, they felt they had reasonable ground to believe Heintz was a homosexual. At that time, they went to a storeroom which had a louvered door installed for the purpose of viewing the interior of the restroom by police officers. This storeroom looked upon the stall where Heintz was located and faced a number of such stalls which did not have doors. To the right of the line of stalls were a number of urinals. Making their observation through the louvered door, the officers saw respondent, who was to the immediate left of the urinals, and Heintz, who was in a stall, engaging in an act of oral copulation through a hole in the stall wall. Seeing the act committed, they then walked out of another door of the storeroom about eight feet from the mentioned stall, then walked down the line of stalls to the point where the respondent and Heintz were committing the alleged act, walked up to the open stall and observed the act being committed from a distance of four feet, at which time the parties so engaged saw the officers, then desisted. The designated persons were thereupon placed under arrest.
When respondent's motion is considered in connection with the stipulated facts, the thrust of his position was that the evidence consisting of the testimony of the police officers was the product of an unreasonable search because of the place he was in when he was observed and the manner in which the officers observed him, a premise which the trial court, by entry of its order granting the motion, sustained.
Section 22 specifically preserves the right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches. The term "search" in its legal meaning implies a quest by an officer of the law. It may be *673 secret, intrusive, or accompanied by force. Ordinarily, observation of that which is open and patent is not a search. See 29 Fla.Jur., Search and Seizure, section 2, page 159; Volume 38 Words and Phrases, Search, and 1965 supplement; 79 C.J.S. Searches and Seizures § 1, pages 775-776. The constitutional guarantee of section 22 does not prohibit all searches but only those that are "unreasonable"; nor is such guarantee circumscribed by any particular formula for determination of reasonableness of a search. Rather, in determining whether or not a reasonable and valid search was made, a court will be guided by the circumstances surrounding the search and the manner in which it was carried out. Longo v. State, 1946, 157 Fla. 668, 26 So.2d 818; Range v. State, Fla. App. 1963, 156 So.2d 534.
A peace officer may make an arrest without a warrant when the person to be arrested has committed a felony in the officer's presence, when a felony in fact has been committed and the officer has reasonable ground to believe that the person to be arrested has committed it, or when the officer has reasonable ground to believe that a felony has been or is being committed and reasonable ground to believe that the person to be arrested has committed or is committing it. Section 901.15, Florida Statutes, F.S.A.
The record before us reveals that the trial court indicated at the hearing that, on the stipulated facts, it would deny the motion were it not for a prior ruling in its local circuit suppressing the evidence in a case wherein the facts were of a similar nature and, in its order, candidly reiterated its personal preference to overrule the motion but granted it because it felt it should follow the prior intracircuit decision. For its consideration, the court had before it two California cases, Bielicki v. Superior Court,[1] May 1962, 57 Cal.2d 602, 21 Cal. Rptr. 552, 371 P.2d 288 and Britt v. Superior Court,[2] October 1962, 58 Cal.2d 469, 24 Cal. Rptr. 849, 374 P.2d 817, apparently cited by respondent's counsel at the hearing to sustain his position that the evidence was the result of an unreasonable search. In each of those cases, it was contended that the evidence had been obtained by an illegal search and seizure in violation of the guarantees of the United States Constitution, 4th and 14th Amendments, and California's Constitution, article 1, section 19. The challenged evidence in each instance was held inadmissible.
In the earlier case, Bielicki, a police officer stationed on the roof of a men's restroom in an amusement park made the observation by means of a spypipe installed in the ceiling of the booths, each of which was a pay toilet enclosed by three walls and a door. Prior to that observation, the officer had never seen either of the defendants and had no ground for believing they were occupying the booths for anything other than a lawful purpose; rather, the observation was part of an apparently established police practice of secret surveillance of any and all occupants of the toilet booths. The evidence was held to have been the result of a general exploratory search conducted for the sole purpose of discovering evidence of guilt and, as such, violative of both federal and state constitutional guarantees. The court subsequently reaffirmed this holding in considering what it characterized as the materially similar issue presented in Britt. There, the four toilet stalls of a men's restroom of a department store, each of which stalls had three walls and a door that could be fastened, were observed by a police officer by means of two vents in a space between the ceiling of the restroom and the next floor above.
*674 There are two later California cases which, like Britt, involved alleged violation of section 288a by the defendants, People v. Norton, December 1962, 209 Cal. App.2d 173, 25 Cal. Rptr. 676; and People v. Young, March 1963, 214 Cal. App.2d 131, 29 Cal. Rptr. 492. In each of these two cases, the defendants, relying on Bielicki, urged that the evidence upon which they were convicted was obtained by an illegal search. The California court, concluding in each case that the evidence was permissible, found that, since the offense was committed out in the open, it made no difference that it was observed by the arresting officer from a hidden position from which he could conduct a more effective vigil.
In Norton, the observing officer had secreted himself behind a partition in the men's restroom of a theater, from which position he was able to keep the general area under surveillance by use of several "observation holes" which had been cut through the partition. While he was there, the proscribed act took place in a toilet stall enclosed on three sides only, the door having been removed so that a person in the men's room proper could see into it. The court distinguished the Bielicki case, summarizing the facts and the holding as we have previously done. Declaring that the critical circumstance of "privacy of place" in Bielicki was not present in the case before it, the court indicated that the criminal activities in Norton, carried on in the doorless stall which opened into the public part of a public restroom, were in plain view of any member of the public who might happen to use the facility. The court added that had the police entered the public part of the restroom, they could have observed the activities in the same way as any member of the public and that if defendant had any right of privacy, he certainly waived it. The factual situation in People v. Young concerned observation made by two police officers while concealed in a gardener's tool shack by looking through a vent on the wall separating the shack from the men's restroom. From that vantage point, they were able to see the door of the restroom and the commodes, which had neither doors nor sides but were exposed to the vision of anyone entering the restroom.
Finally, from the United States Court of Appeals, Ninth Circuit, comes an October 11, 1965 case, Smayda v. United States, 352 F.2d 251, involving appeal from judgment of conviction under a charge of oral copulation as denounced by the mentioned section 288a of California's Penal Code. The location of the offense was Yosemite National Park in a men's toilet and washroom at a resort maintained and operated by a government concessionaire. The toilets were separately enclosed in stalls set side by side, each having a door which swung inward with no means for fastening. Certain complaints and observations indicated to the manager and park rangers that the restroom was being used by homosexuals as a "hangout;" the court found there had been reasonable cause for them to believe the stalls of the restroom had been and would be used in violation of section 288a. By decision of the manager and one of the rangers, a hole was cut over each stall for the purpose of observation, screened to give the appearance of an air vent. The ranger conducted surveillance on two different nights, observing on each occasion persons who made normal use of the facility; and on the second night he observed commission of the crime by the defendants.
Appellants relied primarily on Bielicki and Britt, and the court dealt with these as well as the Norton and Young cases. In its determination, however, the court applied the Fourth Amendment, phrasing the question as being whether that amendment forbids what was done. It then held on two alternative grounds that it does not: (1) If the ranger's conduct was a "search," defendants impliedly consented to it by doing what they did where they did it; and (2) there was no "unreasonable search" within the meaning of the Fourth Amendment. *675 The court mentioned that Bielicki and Britt had been distinguished in Norton and Young on the ground that in the earlier cases the toilets were enclosed, while in Norton and Young the stalls had no doors so that any member of the public who came could have seen the offense. Declining to pass upon the validity of the distinction thus made, the court did think that, as in Norton, if defendants had any right of privacy, they waived it. The court continued:
"No case has yet stretched the Fourth Amendment to make its restrictions applicable to a clandestine observation, by officers of the law, of what goes on in a public place. We decline to be the first court to do so, and we think that these stalls were, in essence, a public place. It makes no difference that in this case, as in Norton and Young, the officer was concealed. By using a public place appellants risked observation, and they have no constitutional right to demand that such observation be made only by one whom they could see."
It may here be noted that our section 22 follows closely the wording used in the Fourth Amendment. The court in Smayda also stated that, if it were assumed the defendants acquired some sort of right to their exclusive occupancy when they entered the toilet stalls, that right was subject to the condition in which the stalls then were, including the spaces above and below the partitions and doors, the holes in the walls, and the holes in the ceiling. The opinion concluded with the holding that when police have reasonable cause to believe that public toilet stalls are being used in the commission of crime and when they confine their activities to the times when such crimes are most likely to occur, they are entitled to institute clandestine surveillance, even though they do not have probable cause to believe that certain persons have committed or will commit the crime.
To sum up the salient aspects of the present case, the observing officers, while checking and using the interior of the municipal public restroom, had observed respondent's codefendant in a stall without a door, peeking at them through a hole in the wall of the toilet stall as they were standing at the urinals. It was then that they instituted the clandestine surveillance. The place utilized for commission of the offense, as the trial judge pointed out in voicing his preference to overrule at the hearing on the motion, was "* * * in an area that would have been easily seen by other members of the public * * * who entered the public restroom * * *."
We are aware of no legal obligation to one committing a crime that he be warned or put upon notice by police officers that he is being watched. In electing to commit a crime at a place where others may see him, one must assume the hazard that he will be seen. It is a matter of common knowledge that public restrooms, provided as a means of accommodation of the public for purposes intended, are often selected by persons of sick or depraved minds as favorite locales for perpetration of indecent or illegal acts. Without proper police vigilance, perverts and criminals could turn more and more to such facilities, particularly those in populous areas, as retreats or trysting places for commission of crime. That which the police saw from their place of concealment was also seen by them upon their re-entry into the interior of the public restroom, where anyone who might have entered could have become witness to the same sight.
Respondent's motion asserting illegality of the search because of the place he was in when he was allegedly observed committing the crime and the manner in which the officers observed him affords no basis, under the circumstances here presented, for a finding that the evidence was suppressible because illegally procured. The *676 order granting the motion to suppress constituted a departure from the essential requirements of the law and is accordingly hereby quashed.
SHANNON, Acting C.J., and LILES, J., concur.
NOTES
[1] Bielicki involved alleged violation of section 286 of California's Penal Code (the infamous crime against nature).
[2] The information in Britt charged violation of section 288a of the state Penal Code (the crime of sex perversion).