194 So.2d 313 (1967)
Marx Daniel BOIM and Clorinda A. Boim, Appellants,
v.
The STATE of Florida, Appellee.
No. 65-161.
District Court of Appeal of Florida. Third District.
January 24, 1967.
*314 Henry R. Carr, Richard Barest, Miami, for appellants.
Earl Faircloth, Atty. Gen., James T. Carlisle and Barry N. Semet, Asst. Attys. Gen., for appellee.
Before CARROLL and SWANN, JJ., and BOYER, TYRIE A., Associate Judge.
BOYER, TYRIE A., Associate Judge.
The appellants were defendants below. A brief chronology of events will aid in an understanding of the points to be here resolved.
On the night of January 26, 1964, there was a disturbance at the home of the defendants resulting in the police being called. Next door to the defendants lived a family named Christian, and next to them, one house removed from the home of the defendants, resided a detective, one Lt. Hayward. On the night of the aforementioned disturbance Lt. Hayward spoke with the defendant, Clorinda A. Boim and with one of her guests, at which time he smelled marijuana smoke emanating from them. Thereafter, on several occasions, he observed both defendants watering a flower bed attached alongside their house. On February 26th, Lt. Hayward, who the evidence reveals to have been an experienced officer, well acquainted with marijuana plants and their use, while standing on the Christian's property observed that the plants in the defendants' planter "were obviously marijuana". He thereupon went onto the defendants' property and knocked on the door for the purpose of arresting them. Upon there being no response, he plucked one of the plants and took it to the police laboratory to have it examined, secured an arrest warrant for unlawful possession of marijuana and returned to the Boim home, together with other officers, on March 1st for the purpose of serving the warrant. The evidence reveals that when the officers knocked on the door Mr. Boim was seen peeking out the window, immediately following which the commode was heard to flush. In a few seconds Mr. Boim opened the door and invited the officers in, whereupon he was arrested. Upon questioning, Mr. Boim admitted that he had attempted to flush some marijuana down the commode and upon examination marijuana could be seen floating in the water therein. Thereafter Mr. Boim led the officers to another room in which he voluntarily produced an envelope containing an ounce of marijuana and also a marijuana cigarette. He also produced pills or capsules containing amphetamine salts, a central nervous system stimulant. Mrs. Boim was not then in the home, but arrived while the officers were still there, whereupon she too was placed under arrest, both she and her husband having been named in the warrant. A search of Mrs. Boim's purse following her arrest revealed four amphetamine tablets. The entire search of the premises following the arrest lasted approximately four hours. In addition to being charged with unlawful possession of marijuana, both Mr. and Mrs. Boim were further charged with unlawful possession of amphetamine salts. Timely motions were filed to suppress the evidence, which motions were denied. Trial by jury was waived, and upon agreement between the defendants and the state the cases were consolidated for trial. The marijuana *315 plant and the other evidence discovered following the arrests were received into evidence over the defendants' objections and they now appeal from a judgment rendered by the court upon a finding of guilty.
The defendants urge that the removal of the marijuana plant on February 26th was incident to an illegal search and seizure and that the warrant thereafter issued was tainted with the illegality of the removal of the marijuana plant and that therefore the search and seizure following the arrest on March 1 were equally illegal because they were incident to an arrest pursuant to an invalid warrant.
It is clear that when Lt. Hayward went onto the defendants' property on February 26th for the purpose of making an arrest without a warrant he had reasonable ground to believe that a felony had been or was being committed by the defendants. Had an arrest at that time been made, though without a warrant, a reasonable search and seizure incident to arrest would have been lawful. However, the problem here arises because there was in fact no arrest.
We further observe that without ever having plucked the marijuana plant Lt. Hayward was already in possession of sufficient information to lawfully procure the issuance of a warrant for the arrest of the defendants; and it is abundantly clear that the evidence subsequently obtained during the search and seizure, which we find to have been lawfully incident to the arrest pursuant to said warrant, was certainly sufficient to sustain the conviction of the defendants. However, inasmuch as a careful examination of the entire record fails to reveal whether the warrant was in fact issued as a result of the information obtained by Lt. Hayward prior to the attempted arrest on February 26th, or whether the warrant was based upon the chemist's report following examination of the marijuana plant; and inasmuch as both the state and the defendants have devoted a majority of their briefs to arguing the lawfulness of the initial removal of the plant and the admission thereof into evidence, we assume, for the purpose of this appeal, that the arrest warrant was based upon the chemist's analysis of the plant plucked by Lt. Hayward when he went upon the defendants' premises for the purpose of making an arrest without a warrant on February 26th.
The law has long been well settled that there may be a search without a seizure, and there may be a seizure without a search. Where no search is required, the constitutional prohibition against unlawful searches and seizures is not applicable. The Constitution does not prohibit a seizure without a warrant when there is no need of a search and where the seized property is fully disclosed and open to the eye and hand. (29 Fla.Jur., Search and Seizure, 175, Sec. 16, and cases there cited.) The Federal Constitution does not forbid all searches and seizures, but only unreasonable searches and seizures. (Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669.)
In affirming a protested judgment of conviction, our sister court of the Second District, in McCain v. State, Fla.App. 1963, 151 So.2d 841, stated:
"Not every search made without a warrant is unlawful but only the search that is unreasonable. What constitutes reasonable and valid search is to be determined by the court through due consideration of the circumstances and manner in which the search is made. Longo v. State, 1946, 157 Fla. 668, 26 So.2d 818; Starks v. State, Fla.App. 1959, 108 So.2d 788." (151 So.2d 844)
Assuming, arguendo, that Lt. Hayward was trespassing when he initially went onto the defendants' property for the purpose of making an arrest without a warrant, it has been held that a mere trespass will not invalidate evidence which is discovered in plain sight during such trespass. *316 (Mosco v. United States, 9 Cir., 301 F.2d 180; Teasley v. United States, 9 Cir., 292 F.2d 460; Hurst v. People of State of California, D.C., 211 F. Supp. 387.) However, the case sub judice is much stronger, for here the evidence reveals that it was not necessary for the officer to go onto the defendants' property in order to discover the marijuana plants but that in fact they were plainly visible without the necessity of a trespass.
In State v. Coyle, Fla.App. 1966, 181 So.2d 671, our sister court of the Second District holding that evidence of a police officer's observation of the commission of a crime through grill work installed in a public restroom was not subject to suppression as having been obtained by illegal search and seizure where the same observation could have been made by the public from the public restroom, stated:
"Section 22 specifically preserves the right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches. The term `search' in its legal meaning implies a quest by an officer of the law. It may be secret, intrusive, or accompanied by force. Ordinarly, observation of that which is open and patent is not a search. See 29 Fla.Jur., Search and Seizure, section 2, page 159; Volume 38 Words and Phrases, Search, and 1965 supplement; 79 C.J.S. Searches and Seizures § 1, pages 775-776. The constitutional guarantee of section 22 does not prohibit all searches but only those that are `unreasonable'; nor is such guarantee circumscribed by any particular formula for determination of reasonableness of a search. Rather, in determining whether or not a reasonable and valid search was made, a court will be guided by the circumstances surrounding the search and the manner in which it was carried out. Longo v. State, 1946, 157 Fla. 668, 26 So.2d 818; Range v. State, Fla.App. 1963, 156 So.2d 534." (181 So.2d 672, 673)
* * * * * *
"We are aware of no legal obligation to one committing a crime that he be warned or put upon notice by police officers that he is being watched. In electing to commit a crime at a place where others may see him, one must assume the hazard that he will be seen. * * *" (181 So.2d 675)
In Lindsey v. State, Fla.App. 1966, 184 So.2d 437, this court considered a case wherein one Lindsey was observed by a police officer displaying certain items for sale. The officer, after questioning, released him from custody but retained the items. The next day the officer learned that a store had been broken into and that the items taken fitted the description of those which had been received from Lindsey. Affirming a conviction, this court stated:
"* * * The articles, which were received in evidence against the defendant, were not the fruit of an unreasonable search and seizure. The articles were openly observed. No search was involved. Beacham v. State, Fla.App. 1965, 175 So.2d 796. Under the circumstances the officer was justified in deeming them stolen goods, and impounding them." (184 So.2d 438)
In Phillips v. State, Fla.App. 1965, 177 So.2d 243, our sister court of the First District considered a case wherein beverage agents, having been informed that someone was operating a moonshine still in the vicinity of a rural community, but not being informed of the exact location thereof, without the aid of a search warrant made a search of the area by pairing off and walking across the countryside. Ultimately one of the agents detected the odor of fermenting mash nearby and upon tracing it discovered a moonshine still located in an oak hammock 50 to 60 yards behind a dwelling house; whereupon, upon learning of the appellant's presence in the dwelling house, the agents went therein and escorted the appellant to the site of the *317 still, following which he was arrested. The trial court overruled timely objections to introduction into evidence of photographs of the still and items of contraband which were seized and confiscated. The officers had not obtained permission to go onto the premises by either the occupant or the owner. The court, affirming an adjudication of guilt of unlawful possession of moonshine whiskey and unlawful possession of a still stated:
"In Pegueno v. State, 85 So.2d 600 (Fla. 1956), the Florida Supreme Court observed in the light of United States v. Seiler, D.C.Md., 40 F. Supp. 895, that the odor of fermenting mash emanating from a dwelling house and detected by experienced revenue officers was in itself probable cause for a reasonable belief that the statutes were being violated; and in Lane v. State, 99 So.2d 609 (Fla. 1958), following Pegueno, held in relation to the illicit manufacture of alcohol that the odor of whiskey mash, when detected by experienced officers, was in itself probable cause to suspect that the statutes were being violated. The officer here involved was experienced in the premises.
"Police officials operate in an atmosphere of reality rather than under ideally-conceived circumstances. Though technically trespassers, the action of the agents in making the search of the area without benefit of a search warrant and as a result of confidential information received by them was not in any sense reprehensible or illegal. Appellant's first point is without merit." (177 So.2d 245)
We conclude that even assuming the arrest warrant to have been issued as a result of information obtained incident to the removal of the plant at a time that the officer was technically trespassing, nevertheless, inasmuch as the evidence reveals the plants to have been clearly visible from the neighboring yard and there observed and identified by an experienced officer, the arrest warrant was not invalidated and there was no impropriety in receiving the plant into evidence. A fortiori, admission into evidence of the other contraband obtained incident to the arrests was eminently proper.
The defendants rely heavily upon People v. Kramer, 38 Misc.2d 889, 239 N.Y.S.2d 303. Though when in conflict we are much more inclined to follow the precedents of our own Florida appellate courts than those of a sister state, we do not here have to make that choice as the Kramer case is clearly distinguishable. There the police officer had to trespass onto the defendant's premises over a high masonry wall in order to observe the violation. In the case sub judice the contraband was visible from a neighboring yard without a trespass.
The defendants also rely heavily upon Houston v. State, Fla.App. 1959, 113 So.2d 582. We have no quarrel with the holding in that case but the facts thereof simply render it inapplicable to the case sub judice. The same court which decided that case distinguished it in Phillips v. State, supra. Those same distinguishing characteristics are applicable here.
The appellants also complain that the four hour search following their arrest was too intensive and that the evidence gained thereby should have been suppressed as having been obtained as a result of an unreasonable search and seizure. We find no merit in this contention. (See Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399.)
Finding no error, the judgment of conviction and sentence appealed are affirmed.
Affirmed.